Jack **PORTER** et al., Plaintiffs,

v.

Philip E. **BAINBRIDGE** et al.,
Defendants.

No. IP 75–26–C.

United States District Court,
S. D. Indiana,
Indianapolis Division.

Dec. 18, 1975.

James E. Hughes, Indianapolis, Ind., for plaintiffs.

Ray Richardson, Greenfield, Ind., for defendants Richardson and McIntyre.

John Wood, Indianapolis, Ind., for all other defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

STECKLER, Chief Judge.

This case is before the Court upon motion for summary judgment filed by all defendants, other than defendants Richardson and McIntyre, and motion for preliminary injunction filed by plaintiffs, each of which motions is supported by affidavits and documentary material.

Upon consideration of such motions, affidavits and documents, the undisputed facts as shown by the pleadings and the stipulations contained in the pretrial entry, and upon consideration of the briefs and argument of counsel for the parties, the Court now makes the following findings of fact.

*Findings of Fact*

1. Plaintiffs Jack Porter ("Porter") and Robert S. and Harriette J. Zimmer (the "Zimmers") are residents of Wabash County, Indiana. They are registered voters and members of the Republican Party.

2. Wabash County is in the Twenty-Third District (the "District") of the House of Representatives of the Indiana General Assembly (the "House"). In the November 5, 1974 general election plaintiff Robert Beauchamp ("Beauchamp") was the Republican candidate for Representative from that District. Beauchamp's sole opponent was the Democratic candidate, defendant Loren Winger ("Winger").

3. On November 5, 1974, Porter was convalescing from an illness at his home following hospitalization. The Zimmers were out of the state. All three had voted by absent voters' ballots ("Absentee Ballots") prior to election day. All three voted for Beauchamp. Their Absentee Ballots were delivered to their respective precincts (Noble Township 10 and 6) on election day where they were eventually counted. Both precincts are machine precincts; the only paper ballots voted there were Absentee Ballots.

4. The District consists of all precincts in Wabash County, three precincts in Huntington County, eight precincts in Grant County and four precincts in Miami County.

5. According to the returns of such election as counted by the respective election officials in the counties included in such District, and certified by the respective county clerks to the Indiana Secretary of State, plaintiff Beauchamp received 8,858 votes and defendant Winger received 8,842 votes for the office of State Representative from such District.

6. Defendants Bainbridge, Campbell, Carson, Harris, Heeke, Phillips, Voisard, McIntyre and Richardson are Representatives in the Ninety-Ninth Session of the Indiana General Assembly, elected to

the House at the general election held November 5, 1974, for a term of two years. Defendant Bainbridge is the Speaker of the House for the Ninety Ninth Session. Defendant Heeke is the Majority Caucus Chairman of the House for such Session. Plaintiffs allege that they are suing such defendants individually and as representatives of a class consisting of all Representatives in the Ninety-Ninth Session of the House who voted to unseat Beauchamp and seat Winger as Representative of the Twenty-Third District.

7. Defendant Sylvia Conolly is the Principal Clerk of the Ninety-Ninth Session of the House. Among her duties is the general oversight of the administration of the House, including receipt of, and supervision of all clerical work relating to the consideration of, bills and resolutions introduced by members. Her duties, however, do not include assignment of seats or desks in the House to members thereof, which duty is performed by the House acting through the respective Caucus Chairmen of the majority and minority political parties.

8. Defendant Charles Fleming is the Chief Doorkeeper of the Ninety-Ninth Session of the House. His duties as such Chief Doorkeeper are defined in the Standing Rules and Orders of the House of Representatives, and particularly Rules 144 and 145, relating to the maintenance of order in the halls and galleries, clearing the chamber and halls of unauthorized persons before the session convenes, executing process issued by authority of the House under the direction of the Speaker, and performing such duties as may be directed by the Speaker of the House. His duties do not include the assignment of seats to members of the House of Representatives nor any regulation of the activities of members either within or without the halls of the House, other than the general responsibility for the maintenance of order.

9. Defendant Brenda Rasdall is the Payroll Clerk of the Ninety-Ninth Session of the House. The duties of Payroll Clerk are not defined in the Official Rules of the House, but include generally bookkeeping responsibilities, keeping payroll records of staff employees, preparation of vouchers for the Auditor of State for payment of outstanding bills, checking the daily rollcall and attendance of members of the House and staff employees. The Payroll Clerk also prepares and approves computer prints for payment of per diem expenses to which members of the House are entitled by law, and has responsibility for computation and approval of mileage allowances and travel voucher forms for House members. In performing her duties the Payroll Clerk acts under the general supervision of the Principal Clerk and the Chairman of Appointments and Claims for the House. The duties of Payroll Clerk do not include keeping records with respect to, or making payments of, salaries to members of the House, which duties are performed exclusively by the Auditor of State.

10. Defendant Currie is the Auditor of the State of Indiana, whose duties include payment of salary and other funds owed to members of the House.

11. House members are paid an annual salary of $6,000.00 and further receive a per diem allowance of $25.00 while conducting House business, plus mileage and expenses. By law the first regular session of each biennial session of the General Assembly is limited to sixty session or working days, and the second regular session, held in even numbered years, is limited to thirty session or working days.

12. On November 18, 1974, Winger filed with the Principal Clerk his "Petition and Specifications of Contest" requesting that the House not seat Beauchamp as Representative from the Twenty-Third District, that the House determine the election contest in an appropriate manner including a recount of the votes cast for the office of State Representative in such District, and requesting that the House declare Winger to

have been duly elected in such election. Beauchamp did not file a written response to that petition.

13. Neither a petition for recount under Chapter 27 of the Indiana Election Code, I.C. 3-1-27, nor a statement of contest under Chapter 29 of the Indiana Election Code, I.C. 3-1-29, was ever filed with respect to the November, 1974 election for State Representative in the District.

14. The House met for its organizational meeting of the Ninety-Ninth Session on November 19, 1974. As shown by the Official Journal of the House for such day, a motion was adopted providing for the election of a Select Committee consisting of five members of the majority party and three members of the minority party to conduct recount and contest proceedings and report its findings to the House with respect to all election contests involving members of the House, in accordance with certain procedures set forth in the motion including the specification that "the Select Committee shall be the sole judge of all voting records, election documents and election results and shall tally the valid votes cast for the contested seat or seats." The Speaker appointed defendants Voisard, Campbell, Carson, Harris, and Phillips as the five Democratic members of such Committee, and defendants McIntyre and Richardson together with Representative Thomas E. Freuchtenicht, not named as a defendant in this action, as the three Republican members of the Committee.

15. The parties to this action have stipulated and agreed that the manner in which the Select Committee was appointed or elected, and the procedure by which the House of Representatives established the Select Committee and delegated to it certain duties and responsibilities, are not here challenged by plaintiffs or placed in issue in this case.

16. Also at its organizational meeting on November 19, 1974, the House administered the oath of office to all Representatives-elect duly certified to the Secretary of State, including plaintiff Beauchamp. The House also adopted a motion that any Representative seated in respect to whose election a petition for recount and contest had been filed in the House should be seated subject to said recount and contest petition and subject to the further action of the House in judging the election, qualification and return of such member.

17. The Select Committee held its initial and organizational meeting on December 9, 1974, at which time it adopted certain rules for the conduct of recounts and the tabulation of votes, supplementing the rules and procedures specified in the House motion providing for the establishment of the Committee. The "Rules for Counting" included in such Committee rules were adopted with the approval of all Committee members present at such meeting upon motion of Representative Richardson, a Republican member of the Committee. Representative Freuchtenicht was not present at such meeting and therefore did not vote; all other members of the Committee were present and approved the adoption of such rules. The rules for counting votes included the following:

"3. No absentee ballot not bearing the seal and initial of the county clerk and the precinct election clerk's initials will be tallied.

"4. No paper ballots which do not bear the precinct clerk's initials will be tallied."

18. All of such rules of procedure and rules for counting ballots, including Rule No. 3 thereof, were adopted prior to the commencement of any recount proceedings or the examination of any ballots in any contested elections by any member of the Committee or any employees or representatives of the Committee.

19. The Select Committee was requested to undertake recounts in House Districts 3, 4, 5, 6, 7, 8, 9, 12, 14, 16, 20, 23, 26, 27, 28, 30, 36, 38, 44, 45, 46, 51, 56, 57, 59, 60, 62, 64, 69, 71, and 72. The recounts requested in Districts 3,

5, 7, 8, 9, 14, 16, 26, 27, 28, 30, 36, 38, 45, 46, 51, 56, 57, 59, 60, 62, 64, 69, and 71 were ruled out of order and inadequate for one or more of the following reasons:

(1) The petitions did not state the names and addresses of all candidates seeking recounts.

(2) The petitions did not designate the specific precincts sought to be recounted.

(3) The petitions were not signed and verified.

Investigations were, however, made into the recounts requested for Districts 4, 6, 12, 20, 23, 44, and 72. The Select Committee recommended that the initial election results from Districts 4, 6, 12, 20, 44, and 72 should stand and that the initial results from District 23 should not stand.

20. After the recount of the votes in the Twenty-Third District had begun under the rules adopted by the Select Committee, Representative Richardson telephoned Representative Voisard to urge and assert that Rule No. 3 adopted by the Committee should be withdrawn because of its supposed conflict with a decision of the Indiana Supreme Court construing the foregoing statutes in an appeal of an election contest. At the time that Representative Richardson first urged that such rule be changed or withdrawn, recounts were already under way and some recounts had already been concluded. The Committee declined to withdraw its Rule No. 3 or alter the rules originally adopted.

21. The Select Committee counted the votes cast for Beauchamp and Winger in the Twenty-Third District, and reported the results of such recount to the House, in accordance with the rules, including the rule that Absentee Ballots which did not contain the initials of the precinct election clerks would not be counted. The results of the Select Committee's recount of the votes for Representative in the Twenty-Third District is shown by the chart attached hereto.

The tally of votes on voting machines was identical to that in the initial certification, under which Mr. Beauchamp received 8,448 votes and Mr. Winger 8,611 votes. The difference in the total tally between the initial certification and the report of the recount committee consisted entirely in a difference in the counting of paper ballots, all of which were cast by absentee voters in the Twenty-Third District. As the chart shows, the Committee, in the application of its rules for counting votes, rejected a total of 155 ballots which had been counted by the canvassing boards, of which 101 had been counted for Mr. Beauchamp and 54 for Mr. Winger. The Committee also counted 8 ballots which had been rejected by the official canvass, of which 7 were cast for Mr. Beauchamp and 1 for Mr. Winger. The result was a net reduction in the tally of the paper ballots of 94 votes counted for Mr. Beauchamp and 53 votes counted for Mr. Winger, resulting in a final tally, including both machine and paper ballots, of 8,764 for Mr. Beauchamp and 8,789 for Mr. Winger. In accordance with such tally, the Committee reported to the House that Mr. Winger should be declared elected and seated as the Representative from the Twenty-Third District.

22. Although a few of the total of 155 Absentee Ballots counted by the official canvass and rejected by the Select Recount Committee were rejected for reasons other than absence of the precinct clerks' initials, which reasons are not shown by the records of the Committee, at least ninety-five percent of such Absentee Ballots were rejected for the reason that the precinct election clerks' initials were not placed thereon, pursuant to Rule 3 of the Committee's rules for counting votes. It follows that the outcome of the election was reversed, and the Committee's recount showed that Mr. Winger had received the majority of valid votes cast in the election, by reason of the application of the Committee's Rule 3.

23. On January 7, 1975, the House voted to accept the majority report of the Select Recount Committee declaring defendant Winger the winner of the election, by a rollcall vote of 49 to 36, after which Winger was administered the oath of office and was seated as Representative from the Twenty-Third District. Prior to the adoption of such report, the House considered a minority report of the Select Committee recommending that the Committee conduct a new recount of votes in each District for which a recount petition was properly filed without disqualifying any paper ballot for the sole reason that the ballot did not bear the initials of the poll clerks. Such minority report was debated and rejected by a rollcall vote of 48 to 37.

24. Subsequent to the administering of the oath of office to Representative Winger, a desk on the floor was assigned to Mr. Winger by Representative Heeke, as Majority Caucus Chairman, and a key to such desk was given to Representative Winger by the Principal Clerk. Pursuant to the instructions of the Chairman of Appointments and Claims, Representative Clifford Arnold, the Payroll Clerk included Representative Winger as a member of the House for purposes of computation of per diem weekly payments in the amounts provided by law for members, at all times subsequent to January 7, 1975.

25. The following sections of the Indiana Election Code relate to the handling, processing and counting of Absentee Ballots and other paper ballots:

I.C. 3–1–22–5:

"Upon receipt of an application by an elector entitled to vote absent voter's ballots by mail the county election board shall mail the official ballots postage fully prepaid, to the address named in the application outside of the county of his residence, on the day of the receipt of such application. Before mailing any ballot, the clerk shall affix his official seal and place his signature near the lower left hand corner on the back thereof leaving sufficient space on the margin of such ballot for the initials of the poll clerks."

I.C. 3–1–22–12:

"At any time between the opening and closing of the polls on such election day, the election inspector of such precinct, in the presence of the election board, shall open the outer or carrier envelope only, announce the absent voter's name and compare the signature upon the application with the signature upon the affidavit on the ballot envelope. In case the election inspector finds the affidavit properly executed and attested, that the signatures correspond, that the applicant is a duly qualified elector of the precinct, that he is duly registered, where registration is required, or that the applicant has not voted in person at such election, or, in case of a primary election, if he has not previously exercised the right of suffrage, if he shall have executed the proper declaration relative to his age and qualifications and the party with which he intends to affiliate, the election inspector shall open the envelope containing the absent voter's ballot in such manner as not to deface or destroy the affidavit thereon and take out the ballot or ballots inclosed therein without unfolding or permitting the same to be unfolded or examined. The inspector shall then deliver such ballot or ballots to the clerks, who shall at once proceed to write their initials, above the signature of the clerk of the circuit court or the secretary of state as the case may be, in ink on the lower lefthand corner of the back of each of such ballots in their ordinary handwriting and without any distinguishing mark of any kind and in the same manner as other ballots are required to be indorsed. The inspector shall thereupon deposit the same in the proper ballotbox or ballot-boxes and enter the absent voter's name in the poll list, the same as if he had been present and voted in person. . . . "

I.C. 3–1–25–1:

"The precinct election boards except as otherwise herein provided shall, in canvassing the votes, begin first with the state ballots and compete [complete] them before proceeding with the local ballots, by laying each ballot upon the table in the order in which it is taken from the ballot-box; and the inspector and the judge of the election differing in politics from the inspector shall view the ballots as the names of the persons voted for are read therefrom. And in the canvass of the votes any member of the election board may protest as to the counting of any ballot, or any part thereof, and any ballot which is not indorsed with the initial of the clerks, as provided for in this act [3–1–1–1—3–1–33–2], and any ballot which shall bear any distinguishing mark or mutilation shall be void, and shall not be counted, and any ballot, or part of a ballot, from which it is impossible to determine the elector's choice of candidates, shall not be counted as to the candidate, or candidates, affected thereby; . . . ."

26. In *Lorch v. Lohmeyer*, 252 Ind. 182, 247 N.E.2d 61 (1969), in a three to two decision, the Indiana Supreme Court ruled that in an election contest and recount conducted under the provisions of the Indiana Election Code, relating to an election for the office of city judge, absentee ballots which lacked the initials of the precinct election clerks as required by the statute should nevertheless be counted. The dissenting judges argued that the earlier decision of the Court in *Sims v. George*, 250 Ind. 595, 236 N.E.2d 820 (1968), had held that absentee ballots which lacked the poll clerks' initials should not be counted in such a recount or contest proceedings.

27. Article 4, Section 8 of the Constitution of Indiana provides in part:

"For any speech or debate in either House, a member shall not be questioned in any other place."

28. Article 4, Section 10 of the Constitution of Indiana provides in part:

"Each House, when assembled, shall choose its own officers, the President of the Senate excepted; judge the elections, qualifications, and returns of its own members; determine its rules of proceeding, and sit upon its own adjournment."

Based on the foregoing findings of fact, the Court now makes the following conclusions of law.

*Conclusions of Law*

1. Plaintiffs assert that the Court has jurisdiction of this action under 28 U.S.C., Sections 1331 and 1343, alleging that the matter in controversy exceeds the sum of $10,000.00, exclusive of interest and costs, and arises under the Constitution or laws of the United States, and that the action is brought pursuant to 42 U.S.C., Sections 1983 and 1985.

2. Plaintiffs' complaint, and the facts set forth above, fail to state a claim upon which relief can be granted based on 42 U.S.C., Section 1983. Plaintiffs do not allege that either the provisions of the Indiana Election Code requiring that the precinct election clerks place their initials on absentee ballots when they are delivered to the polls and that ballots which do not contain such initials of the clerks may be protested and rejected, or the rules adopted by the Select Recount Committee providing that all absentee ballots and paper ballots which do not contain the initials of the precinct election clerks will not be tallied, are facially unconstitutional under the Fourteenth Amendment to the United States Constitution. They allege only that in adopting such rule and applying it to the recount of votes for Representative in the Twenty-Third District, the Select Recount Committee, and the House of Representatives in approving the report of such Committee, failed to follow decisions of the Indiana Supreme Court holding that in counting votes for purposes of statutory recount

or contest proceedings under the appropriate provisions of the Indiana Election Code absentee ballots should be counted regardless of whether they contain the initials of the precinct election clerks. Allegations of a violation of rules or requirements of state law are insufficient to state a claim for relief under 42 U.S. C., Section 1983. Moreover, plaintiffs' complaint does not allege, and the facts set forth above do not tend to prove, any violation of plaintiffs' voting rights or plaintiffs' First Amendment rights to freedom of speech, assembly and petition for redress of grievances, as incorporated in the Due Process Clause of the Fourteenth Amendment. In so far as plaintiffs rely on the Equal Protection Clause of the Fourteenth Amendment, they fail to allege any intentional and purposeful discrimination against an identifiable class or group. The Select Committee's Rule No. 3, requiring that the election clerks initial the ballots, is a reasonable and logical requirement to assure that only the ballots of properly registered and qualified voters are in fact deposited in the ballot box at the precinct. This procedure assures qualified and registered voters that their votes will not be diluted or nullified by votes of unqualified and unregistered persons.

3. Plaintiffs' complaint, and the facts set forth above, fail to allege or show any claim upon which relief can be granted under 42 U.S.C., Section 1985(3). No facts are alleged or established showing any of the essential elements of a conspiracy. Votes cast by members of a legislative body acting within the scope of their duties and responsibilities, without more, do not constitute a conspiracy among the members of such body, within the meaning of 42 U.S.C., Section 1985. Moreover, the complaint does not allege an intent or purpose to deprive any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and Section 1985 does not extend to conspiracies to deny due process of law or to deny First Amendment rights of freedom of speech and assembly. Nor do the facts tend to show an intentional or purposeful deprivation of the rights of any definable class, as required to establish a claim under Section 1985.

4. The Court lacks jurisdiction of this action under 28 U.S.C., Section 1343, since the action is not "authorized by law" under any of the statutory provisions relied on by plaintiffs and therefore is not within the jurisdiction of the Court under Section 1343.

5. The Court lacks jurisdiction of the action under 28 U.S.C., Section 1331, for the reason that the complaint does not state any claim "arising under" any provision of the federal Constitution or laws. In addition, plaintiffs have stipulated that such jurisdiction is lacking with respect to the plaintiffs Porter and Zimmers since the requisite amount in controversy is not alleged. Plaintiff Beauchamp's allegations with respect to the amount in controversy, limited only to the amount which he would be entitled to receive for attendance at the Second Session of the Ninety-Ninth General Assembly, commencing in November 1975, are insufficient to show the requisite amount in controversy for purposes of 28 U.S.C., Section 1331.

6. Defendants as members of the Indiana House of Representatives are immune from liability with respect to the relief requested in plaintiffs' complaint under the Speech or Debate Clause of the Indiana Constitution, Article 4, Section 8, and pursuant to common law rules of immunity applicable in actions under 42 U.S.C., Sections 1983 and 1985, under the principles of *Eastland v. United States Servicemen's Fund*, 421 U.S. 401, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975) and *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). Those defendants who are officers and employees of the House, with the duties and responsibilities herein described, are also within the scope of such immunity with respect to the action of the House in determining the

outcome of the election in the Twenty-Third District.

7. The relief requested by plaintiffs is also barred by the Eleventh Amendment to the United States Constitution, since in reality it is a suit to mandate the Indiana House of Representatives, acting as a corporate legislative body and an arm of the state government, to reverse its action of January 7, 1975, and to unseat defendant Winger and seat plaintiff Beauchamp as State Representative from the Twenty-Third District.

8. Allegations that the Indiana House of Representatives erroneously rejected certain ballots in its tabulation of votes in an election contest relating to one of its own members do not state a claim for violation of any rights protected by the Fourteenth Amendment to the United States Constitution, since the right and responsibility to determine and judge such an election contest is vested exclusively in the House under Article 4, Section 10 of the Indiana Constitution, and the federal courts have no jurisdiction to review or revise the determination of the appropriate state legislative body in the exercise of such powers. The plaintiffs have not cited, nor has the Court been able to discover, any decision in which a federal court has reviewed the merits of an election contest for a state legislative office.

9. As a matter of Indiana law it is not clear either that the House in judging an election contest pursuant to Article 4, Section 10 of the Indiana Constitution is bound to follow the latest decision of the Indiana Supreme Court with respect to the rules for counting of ballots in a statutory judicially-supervised election recount, or that the filing of a statutory recount proceeding in state court is a condition precedent to the determination of an election contest by the House, as plaintiffs assert. Indiana decisions prior to the 1961 Amendments to Chapter 27 of the Indiana Election Code, I.C. 3–1–27, relating to recounts for members of the General Assembly, indicate that the courts have no jurisdiction to conduct or supervise such recounts. In the absence of a controlling decision of the Indiana Supreme Court interpreting such statutory provisions as amended, this Court will abstain from deciding such questions of state law. *Harris County Commissioners Court v. Moore*, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975).

10. This action is in essence a contest between two opposing candidates for a seat in the Indiana House of Representatives and does not involve the denial of the right to vote of any of the plaintiffs protected by the Equal Protection Clause of the United States Constitution; and accordingly plaintiffs Porter and Zimmers, who claim an interest in the case only in their capacity as voters, lack standing to maintain the action under the principles of *Schlesinger v. Reservists' Committee to Stop War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) and *Ex parte Levitt*, 302 U.S. 633, 58 S.Ct. 1, 82 L.Ed. 493 (1937).

11. No dispute exists as to any material fact, and defendants are entitled to summary judgment in their favor as a matter of law, on the ground that plaintiffs' complaint fails to state a claim upon which relief can be granted, the Court lacks jurisdiction over the subject matter, and plaintiffs are not entitled to any of the relief requested in their complaint.

12. In view of the Court's conclusion that the plaintiffs' complaint fails to state a claim upon which relief can be granted, the plaintiffs' action is moot as to defendants Richardson and McIntyre even though they did not join in the motion for summary judgment submitted by the other defendants.

## ANALYSIS OF COUNT OF ABSENTEE BALLOTS IN 23rd HOUSE DISTRICT

B--Robert Beauchamp, Republican candidate.
W--Loren Winger, Democratic candidate.

| County | Number of Precincts In District | Ballots Rejected By Both Election Boards and Recount Committee | | Ballots Counted By Both Election Boards and Recount Committee | | Ballots Rejected By Election Boards and Counted By Recount Committee | | Ballots Counted By Election Boards and Rejected By Recount Committee | | Election Board Totals | | Recount Committee Totals | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | B | W | B | W | B | W | B | W | B | W | B | W |
| Wabash | 23 | 1 | 0 | 221 | 114 | 5 | 1 | 59 | 31 | 280 | 145 | 226 | 115 |
| Grant | 8 | 2* | | 24 | 30 | 0 | 0 | 42 | 22 | 66 | 52 | 24 | 30 |
| Miami | 4 | 3 | 0 | 35 | 22 | 2 | 0 | 0 | 1 | 35 | 23 | 37 | 22 |
| Huntington | 3 | 0 | 0 | 29 | 11 | 0 | 0 | 0 | 0 | 29 | 11 | 29 | 11 |
| Totals | 38 | 6* | | 309 | 177 | 7 | 1 | 101 | 54 | 410 | 231 | 316 | 178 |

*The Committee records did not show a candidate breakdown with respect to these rejected ballots in Grant County.

### SUMMARY OF TOTAL COUNT

ELECTION BOARD TOTALS

| | B | W |
|---|---|---|
| Voting Machines | 8,448 | 8,611 |
| Paper Ballots | 410 | 231 |
| Total | 8,858 | 8,842 |

RECOUNT COMMITTEE TOTALS

| | B | W |
|---|---|---|
| Voting Machines | 8,448 | 8,611 |
| Paper Ballots | 316 | 178 |
| Total | 8,764 | 8,789 |