Roger G. DesVERGNES and Heritage Homes of Attleboro, Inc., Plaintiffs,

v.

The SEEKONK WATER DISTRICT, a Municipal Corporation, Barbara R. Mann, Harold G. Devine, Jr., and Paul R. Tortolani, Defendants.

Civ. A. No. 77–1251–C.

United States District Court, D. Massachusetts.

April 14, 1978.

Michael J. Duggan, Stephen D. Clapp, Armstrong, Pollis & Clapp, North Attleboro, Mass., for plaintiffs.

William E. Hickey, Quincy, Mass., John J. Graham, Boston, Mass., for Seekonk Water Dist.

Alvin Jack Sims, Brockton, Mass., for Barbara R. Mann, Larry C. Kenna, Lawrence B. Litwak, Choate, Hall & Stewart, Boston, Mass., for Harold G. Devine and Paul R. Tortolani.

### MEMORANDUM

CAFFREY, Chief Judge.

This civil rights action, which seeks both monetary damages and 'injunctive relief, is brought under 42 U.S.C.A. §§ 1983, 1985, and the equal protection clause of the Fourteenth Amendment of the United States Constitution. Jurisdiction is invoked under 28 U.S.C.A. §§ 1331 and 1343,[1] and the amount-in-controversy, exclusive of interest and costs, allegedly exceeds $10,000. Now before the Court are motions by the three individual defendants to dismiss the complaint and for the award of reasonable attorney fees, as well as plaintiffs' motion for a preliminary injunction. By answer, defendant Seekonk Water District has asserted, *inter alia*, the affirmative defenses of lack of jurisdiction and failure to state a claim upon which relief can be granted. At this stage, the material facts alleged in the complaint will be construed in the light most favorable to plaintiffs and taken as admitted. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir. 1976).

Plaintiff Heritage Homes of Attleboro, Inc. (Heritage), is a corporation organized under the laws of the Commonwealth of Massachusetts and having a usual place of business in Attleboro, Massachusetts. Plaintiff Roger G. DesVergnes is the president, treasurer, and sole stockholder of Heritage, and a resident of Attleboro. Defendant Seekonk Water District (District), is a municipal corporation established by 1945 Mass.Acts ch. 381. It consists of all the inhabitants who are liable to taxation in the Town of Seekonk and who reside within specified boundaries. The members of the District, through the administrative body of an elected Board of Water Commissioners, regulate the provision and use of water within the District. *Id.* §§ 1, 2, 9. Water use charges are levied against members by the Commissioners. *Id.* § 10. Individual members of the District have the exclusive right to vote on significant matters placed on the agenda of annual and special meetings. Defendants Barbara R. Mann, Harold G. Devine, and Paul R. Tortolani are voting members of the District and residents of Seekonk. Neither of these latter three defendants is alleged to be a state, county or local official.

The complaint declares that Heritage acquired by purchase a tract of land in Seek-

---

1. Sections 1983 and 1985 of Title 42 do not, as plaintiffs allege, provide an independent source for the Court's jurisdiction apart from 28 U.S.C.A. § 1343(1), (3). *See Harrison v. Brooks*, 446 F.2d 404, 407–09 (1st Cir. 1971).

onk for construction of a moderate-income housing subdivision. On February 1, 1976, prior to the actual purchase, DesVergnes met with two members of the Board of Water Commissioners, informed them of the contemplated housing development, and emphasized to them that a decision by him to go forward with the land acquisition and development was dependent upon a corresponding decision by the District to supply water to the proposed development. The two Commissioners allegedly informed DesVergnes that the District already planned to extend its boundaries to encompass his locus, that existing water supplies were adequate to service the described project, and that the parcel met all the criteria for inclusion within the District, thus making actual inclusion, which only could be effectuated by vote of a majority of the individual District members,[2] "a mere formality" in the minds of DesVergnes and the Commissioners.

In reliance upon only these oral representations, Heritage purchased the property on April 26, 1976 for $300,000, and DesVergnes obligated himself personally as the guarantor of notes payable to Taunton Cooperative Bank in the amount of $375,000. Heritage then submitted a written application to the Commissioners for formal inclusion of the locus within the District. The Commissioners caused that application to appear as Article 17 in the Warrant for the District's Annual Meeting. The Warrant also contained an Article 18, which sought inclusion within the District of a substantially similar, but apparently noncompeting, parcel that a Monterey Corporation planned to develop separately for moderate-income housing.

The gravamen of plaintiffs' complaint is that after the Warrant for the Annual Meeting was made public, defendants Mann, Devine, and Tortolani began intentionally and knowingly misrepresenting to other voting members of the District that the Heritage subdivision would consist of "Federally subsidized low-income housing," and/or housing consisting of "shacks," designed to attract "low-income" and/or "colored" people to the Town of Seekonk. Defendants allegedly made these misrepresentations with knowledge of plaintiffs' existing financial commitment and of the dire consequences to the corporate and individual plaintiffs if their application were denied. At the Annual Meeting on May 11, 1976, after being informed by the Commissioners that both proposed subdivisions satisfied existing criteria and that water supplies were adequate to service both developments, District members rejected plaintiffs' application to extend the District's boundaries by a vote of 66 to 8. At the same meeting, the voters approved by a vote of 25 to 6 the inclusion within the District of the Monterey Corporation's property. Construction on plaintiffs' development immediately halted and all subsequent efforts to gain inclusion within the District have failed.

Plaintiffs claim that defendants' conduct incited in the voting members class-based, discriminatory prejudice against and fear of the plaintiffs, in particular, and low-income people and racial minorities, in general. It

2. The District's enabling statute grants to the voting members the discretion to consider the merits of an application and decide whether to include or exclude specific parcels from the District:

Upon a petition in writing addressed to said board of water commissioners requesting that certain real estate . . . located in said town and abutting on said district and not otherwise served by a public water supply be included within the limits thereof, and signed by the owners of such real estate, . . . said water commissioners shall cause a duly warned meeting of the district to be called, at which meeting the voters may vote on the question of including said real estate within the district. If a majority of the voters present and voting thereon vote in the affirmative the district clerk shall within ten days file with the town clerk of said town and with the state secretary an attested copy of said petition and vote; and thereupon said real estate shall become and be part of the district . . .

1945 Mass.Acts ch. 381, § 13.

is also alleged that a conspiracy existed whose unlawful purpose was to subvert the regulatory scheme of the District. Plaintiffs conclude their complaint by charging that defendants' actions fostered an arbitrary, capricious distinction between Heritage and other water applicants, and caused the vote of disapproval of the Heritage parcel.

As to damages, plaintiffs claim that deprivation of the planned use of their property has caused continuing monetary damages in the sum of $10,000 per month since June 1, 1976. Plaintiffs also claim the imminent and irreparable loss of the assets, goodwill, and future earning power of Heritage, as well as personal insolvency and loss of future earning power on the part of DesVergnes.

For relief, plaintiffs demand:

(1) judgment against each defendant in the amount of $500,000, plus interest and costs;

(2) a preliminary injunction ordering the District to permit Heritage to extend a presently existing water main to its property at its own expense, and to purchase water from the District at the presently existing rate; and

(3) a permanent injunction mandating that the District extend its boundaries to include the Heritage locus, and supply water to the subdivision and its future owners in the same manner and on the same basis as water is supplied to all other members of the District.

I

*Motions to Dismiss*

A. *42 U.S.C.A. § 1983*

■ Plaintiffs' complaint concedes that defendant Water District is a municipal corporation created by a special act of the State legislature. Although such an entity may not be able to assert the defense of governmental immunity under all provisions of the Civil Rights Acts, it is well-established that the District's municipal status imposes a jurisdictional barrier to the § 1983 claims for monetary and injunctive relief, because the District is not a "person" within the meaning of § 1983. *City of Kenosha v. Bruno*, 412 U.S. 507, 512–13, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape*, 365 U.S. 167, 191–92, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Sethy v. Alameda County Water District*, 545 F.2d 1157, 1159–61 (9th Cir. 1976) (en banc). Accordingly, plaintiffs' § 1983 cause of action should be dismissed against the Seekonk Water District because it appears from the face of the complaint that this Court lacks jurisdiction under 28 U.S.C.A. § 1343(3), as was alleged in the District's answer. *See City of Kenosha v. Bruno, supra*, 412 U.S. at 513, 93 S.Ct. 2222.

■ The individual defendants move to dismiss plaintiffs' § 1983 claim on the ground that the complaint fails to allege the necessary statutory element that the actions of these defendants were performed "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory . . . ." 42 U.S.C.A. § 1983.

The lone reference to unlawful action by the three individual defendants is found in paragraph 18 of the complaint. At most, that allegation charges that Mann, Devine, and Tortolani, in their capacities as private citizens and as District members, maliciously provoked a class-based, public debate by falsely labeling plaintiffs' proposed housing development as designed for occupancy by low-income and minority persons. The complaint does not assert that at the time of these activities Mann, Devine, or Tortolani were public officials of either the Commonwealth of Massachusetts, Bristol County, or the Town of Seekonk, or were members of the Board of Water Commissioners. Plaintiffs attempt to close this logical gap by arguing that these private individuals may be held liable under § 1983 because they were jointly engaged with a state actor, namely, the Water District, in the dep-

rivation of civil rights. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), *quoting United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). But the ruling above that the District is immune from § 1983 liability leaves no remaining state or local actor with whom these private parties could act in concert under color of state law. *Cf. Downs v. Sawtelle*, 574 F.2d 1 at 10 (1st Cir. 1978). However, wrongful, purely private conduct, performed not under color of state law, is not a sufficient predicate for a federal cause of action under § 1983.[3] *Civil Rights Cases*, 109 U.S. 3, 17–18, 3 S.Ct. 18, 27 L.Ed. 835 (1883); *Berrios v. Inter American University*, 535 F.2d 1330, 1331 (1st Cir. 1976); *Ouzts v. Maryland National Insurance Co.*, 505 F.2d 547, 550 (9th Cir. 1974) (en banc), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1681, 44 L.Ed.2d 103 (1975).

Consequently, plaintiffs' § 1983 action against defendants Mann, Devine, and Tortolani should be dismissed for failure to state a claim upon which relief can be granted. *See generally Bell v. Hood*, 327 U.S. 678, 682–85, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Elders v. Consolidated Freightways Corp., supra* at 633.

### B. *42 U.S.C.A. § 1985*

■ Although plaintiffs have failed to provide a specific citation, the only provision of 42 U.S.C.A. § 1985 conceivably applicable to this case is subsection (3), which provides in pertinent part:

> If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly,

any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

Defendants assert that the complaint fails to state a claim under § 1985 because it does not sufficiently allege: (1) that a conspiracy existed; (2) that plaintiffs were denied rights protected by federal law or the United States Constitution; (3) that plaintiffs were conspired against because of their membership in a class defined by invidious criteria; or (4) that defendants performed any overt act in furtherance of the conspiracy. Defendants alternatively contend that even if the alleged misrepresentations were the product of a conspiracy, they represent robust political debate protected by the free speech clause of the First Amendment and, therefore, cannot serve as a basis for a cause of action under 42 U.S.C.A. § 1985.

At the outset, it should be noted that while the defendant District, as a municipal corporation, is not a "person" subject to suit under § 1985(3), *Bosely v. City of Euclid*, 496 F.2d 193, 195 (4th Cir. 1974); *Spampinato v. City of New York*, 311 F.2d 439, 440 (2d Cir. 1962), *cert. denied*, 372 U.S. 980, 83 S.Ct. 1115, 10 L.Ed.2d 144 (1963); *Steel Hill Development, Inc. v. Town of Sanbornton*,

---

**3.** In an an analogous situation, another District Court has observed that:

> It is not enough that the defendant exercises some power possessed only by virtue of his private citizenship. Such conduct, even when wrongful, does no violence to the rights protected by the statutes [42 U.S.C.A. §§ 1983, 1985] here relied upon by the plaintiff. Rather the acts must be such as are a manifestation of an alloy of the power of the

state, and possible only because the defendant has been somehow dressed with that power. To some extent the state itself must be involved, or the alleged wrongdoer must be acting under its authority or wielding a power of the sort commonly attached to the state. . . .

*Elders v. Consolidated Freightways Corp.*, 289 F.Supp. 630, 633–34 (D.Minn.1968).

335 F.Supp. 947, 950 (D.N.H.1971), the three individual defendants can be held liable under § 1985(3) for a private conspiracy, even in the absence of any action under color of state law, *Griffin v. Breckenridge*, 403 U.S. 88, 96–101, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

Plaintiffs commence their § 1985 count with a paragraph incorporating by reference the prior 31 paragraphs relating to the statement of facts, the allegations of jurisdiction, and the § 1983 and Fourteenth Amendment claims. Aside from two paragraphs tracking the language of *Griffin* and § 1985(3), and a third paragraph alleging one purpose of the conspiracy, plaintiffs' § 1985(3) count sets forth no additional facts concerning the formation of the conspiracy or overt acts in furtherance of it. This complaint is hardly a paradigm of specificity. But given the secrecy that usually envelops the formation and operation of a conspiracy, the liberal standards of Fed.R.Civ.P. 8(a), and the policy against dismissal of civil rights pleadings except in the plainest circumstances, the allegations in paragraphs 18–20 and 30 of concerted action, willful participation, and specified acts of intentional misrepresentation do constitute a minimal statement of the existence of a conspiracy and the commission of one or more overt acts in furtherance thereof. *Cf. Kadar Corp. v. Milbury*, 549 F.2d 230, 233–34 (1st Cir. 1977). The individual defendants' objection to the absence of any specific allegations concerning their knowledge of plaintiffs' dealings with the Commissioners is misplaced in light of Fed.R. Civ.P. 9(b), which provides that in a pleading "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *See* 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 9.03, at 1936 (1975).

It is also necessary to allege under § 1985(3) that federally-protected rights have been abridged by defendants' conduct. C. Antieau, *Federal Civil Rights Acts* § 96 (1971). The precise nature of the rights allegedly violated is disputed by the parties. But even treating that issue at this stage in the light most favorable to plaintiffs, the Court concludes that plaintiffs' claim of a civil rights conspiracy is undercut by the narrowing by appellate courts of the literal scope of § 1985(3).

In *Griffin v. Breckenridge, supra,* the Supreme Court held that while § 1985(3) reached private conspiracies, a required element is a "racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102 & n.10, 91 S.Ct. at 1798. Plaintiffs argue that this language in *Griffin* focuses upon the class-based nature of the invidiously discriminatory animus, and does not mandate that a plaintiff must personally be a member of the target class. The Court of Appeals for the Third Circuit appears to be the only appellate court that has squarely held that a § 1985(3) plaintiff need not be a member of the class allegedly discriminated against. *Richardson v. Miller*, 446 F.2d 1247, 1249 (3d Cir. 1971). On the other hand, the Court of Appeals for the First Circuit has interpreted the *Griffin* holding to require, first, that § 1985(3) plaintiffs must be members of a class readily recognizable or traditionally protected by the Civil Rights Act, and, second, that defendants must have conspired against plaintiffs to deny them equal protection *because of their membership in a class* and that the criteria defining that class were invidious. *Harrison v. Brooks*, 519 F.2d 1358, 1359–60 (1st Cir. 1975); *Bricker v. Crane*, 468 F.2d 1228, 1232–33 (1st Cir. 1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1368, 35 L.Ed.2d 592 (1973). Indeed, that Court has held that "[t]he requirement that the discrimination be 'class-based' is not satisfied by an allegation that there was a conspiracy which affected the interests of a class of persons similarly situated with the plaintiffs." *Harrison v. Brooks, supra.* The reiteration of the strict rule of class membership in *Hahn v. Sargent*, 523 F.2d 461, 469 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976), coupled with a

*but see* citation to *Richardson*, leads this Court to the conclusion that the *Richardson* interpretation of *Griffin* has been implicitly rejected as the law of the First Circuit.[4]

Plaintiffs in the instant case can only be characterized as members of a class engaged in the construction and development of a housing subdivision. There is no allegation that DesVergnes is a member of a racial minority, or that he and his corporation have affirmatively associated themselves and their proposed housing with such a group. Indeed, plaintiffs strongly contend that their project was *misrepresented* as being linked with low-income, minority housing. In effect, plaintiffs argue that as the innocent-bystander victims of fomented racial prejudice, they should be entitled to claim constructive membership in a similarly-situated racial class that often has been directly subjected to such opprobrium. Though it appears beyond dispute that the animus here was alleged to be both class-based and invidiously discriminatory, plaintiffs lack the inherent, immutable characteristics identifying that class. Therefore, on the basis of the strict requirements concerning actual class membership that have been enunciated by the Court of Appeals for this Circuit, I reject plaintiffs' plea for constructive class membership and rule that the logical gap between actual and constructive class membership is insurmountable under any set of facts plaintiffs could prove.

For these reasons, plaintiffs' cause of action under § 1985(3) should be dismissed for failure to state a claim upon which relief can be granted.

### C. *Fourteenth Amendment*

Plaintiffs' final count, although not separately denominated as such, is based direct-ly on the Fourteenth Amendment. Invoking jurisdiction under 28 U.S.C.A. § 1331, plaintiffs claim that defendants' purposeful discrimination abridged their right to equal protection in consideration of their application for inclusion, and offended due process by subverting the regulatory scheme of the District. *Cf. Burt v. City of New York*, 156 F.2d 791, 792 (2d Cir. 1946). Because this claim for federal relief is not frivolous or made solely for the purpose of obtaining jurisdiction, I find that this action arises under federal law for purposes of § 1331 and that this Court has jurisdiction to adjudicate whether plaintiffs have stated a claim upon which relief can be granted. *Bell v. Hood, supra*, 327 U.S., at 682–83, 66 S.Ct. 773; *Kostka v. Hogg*, 560 F.2d 37, 41 & n.5 (1st Cir. 1977).

■ At the outset, I rule that the threshold requirement of state action bars any Fourteenth Amendment claim against Mann, Devine, and Tortolani, regardless of how discriminatory their private conduct may have been. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 172, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); *The Civil Rights Cases, supra*, 109 U.S., at 23, 3 S.Ct. 18. In addition, there is no allegation in the instant case that the State enforced the privately-originated discrimination or otherwise significantly involved itself as a joint participant in invidious discrimination. *Cf. Reitman v. Mulkey*, 387 U.S. 369, 380–81, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *Downs v. Sawtelle, supra* at 6–10. As against

---

4. Other courts, relying on *Griffin's* observation that § 1985(3) "was [not] intended to apply to all tortious conspiratorial interferences with the rights of others," 403 U.S. at 101, 91 S.Ct. at 1798, also have dismissed cases in which either there was no identifiable class or defendants' conduct was aimed at plaintiffs as individuals, not *qua* members of a traditionally-protected class. *E. g., Arnold v. Tiffany*, 487 F.2d 216, 217–19 (9th Cir. 1973), *cert. denied*, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974); *Hughes v. Ranger Fuel Corp.*, 467 F.2d 6, 10–11 (4th Cir. 1972); *Jacobson v. Industrial Foundation of the Permian Basin*, 456 F.2d 258, 259 (5th Cir. 1972); *Kletschka v. Driver*, 411 F.2d 436, 447 (2d Cir. 1969); *Kimble v. D. J. McDuffy, Inc.*, 445 F.Supp. 269 (E.D.La.1978); *Puentes v. Sullivan*, 425 F.Supp. 249, 252 (W.D. Tex.1977); *Smith v. Armstrong*, 396 F.Supp. 753, 754 (N.D.Tex.), *aff'd*, 524 F.2d 1231 (5th Cir. 1975).

the District, plaintiffs have only charged that some of its private-individual members spoke against and then voted down the Heritage proposal. The votes cast by the District's members, as well as their speech and debate at the District meeting, were within the scope of their statutory responsibility to make a quasi-legislative determination on the merits of the Heritage Warrant. *See* 1945 Mass.Acts ch. 381, § 13. Accordingly, those votes and that speaking do not provide a basis for holding the District vicariously liable. *See generally Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 501–03, 95 S.Ct. 1830, 44 L.Ed.2d 324 (1975); *Tenney v. Brandhove*, 341 U.S. 367, 372–79, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); *Porter v. Bainbridge*, 405 F.Supp. 83, 91 (S.D.Ind.1975).

■ Nor is there any basis on these facts for holding the District directly liable. In an opinion by Chief Judge Coffin in *Kostka v. Hogg, supra*, the Court of Appeals for this Circuit recently has held, in essence, that an implied right of action for damages against a municipal corporation is not constitutionally compelled under the Fourteenth Amendment and, at best, may be available only when there has been "municipal involvement" in the alleged wrongdoing. *Id.* at 44–45. The Court also refused to fashion a similar remedy under its federal common-law powers, citing the inconsistency of such relief with the doctrine of municipal immunity, established under § 1983 by *Monroe v. Pape, supra*, 365 U.S., at 191–92, 81 S.Ct. 473, and its progeny. 560 F.2d at 44 & n.7. I conclude that none of the allegations concerning the District, its Commissioners, or its voting members amounts to a sufficient charge of "municipal involvement" to serve as a basis for an implied Fourteenth Amendment action for damages. In addition, the holding in *City of Kenosha v. Bruno, supra*, 412 U.S., at 512–13, 93 S.Ct. 2222, that municipal corporations are not "persons" under § 1983 for purposes of injunctive relief, suggests that the Court of Appeals, in an appropriate case, would expand *Kostka* to also bar plaintiffs' implied Fourteenth Amendment action for equitable relief, in the absence, as here, of a sufficient allegation of "municipal involvement."[5] *See generally Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

Therefore, plaintiffs' implied cause of action under the Fourteenth Amendment should be dismissed for failure to state a claim upon which relief can be granted.

## II

### *Motions for Attorney Fees*

■ All defendants seek the award of reasonable attorneys fees, in addition to costs and disbursements. The Civil Rights Attorney's Fees Award Act of October 19, 1976, Pub.L.No. 94–559, § 2, 90 Stat. 2641, *amending* 42 U.S.C.A. § 1988 (1970), provides in pertinent part that:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

The legislative history clearly indicates that the dominant Congressional purposes were to bridge the anomalous gaps in civil rights law created by the fee-award decision in

---

5. Plaintiffs cite such cases as *Donohoe Construction Co., Inc. v. Maryland-National Capital Park and Planning Commission*, 398 F.Supp. 21, 24 & n.2 (D.Md.1975); *Stephens v. City of Plano*, 375 F.Supp. 985, 986 (E.D.Tex.1974); and *Dahl v. City of Palo Alto*, 372 F.Supp. 647, 650–51 (N.D.Cal.1974), as authority for finding § 1331 jurisdiction against a municipal corporation under the Fourteenth Amendment when more than $10,000 is alleged to be in controversy. Since plaintiffs' due process claim is based upon a charge of distortion of the regulatory scheme of the District, *Donohoe, Stephens*, and *Dahl* are all distinguishable on their facts as "taking" cases and as such were expressly excepted from the holding in *Kostka v. Hogg, supra* at 45, that controls the instant case.

**1264**

*Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 269–71, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), and to enhance private enforcement of all civil rights by authorizing the essential remedy of fee-shifting. *E. g., S.Rep.No.* 94–1011, 94th Cong., 2d Sess. 1–2, 6 (1976), *reprinted in* 5 *U.S. Code Cong. & Admin.News,* pp. 5908, 5909–11 (1976). The statute itself provides no precise standard for when a court should exercise its discretion in a situation in which defendants are the prevailing parties. But the Senate, fearful of the deterrence of good faith plaintiffs by the prospect of having to pay the counsel fees of a prevailing defendant, explicitly declared in its report that:

> [A plaintiff], if unsuccessful, could be assessed his opponent's fee only where it is shown that [plaintiff's] suit was clearly frivolous, vexatious, or brought for harassment purposes. [citation omitted]. This bill thus deters frivolous suits by authorizing an award of attorneys' fees against a party shown to have litigated in "bad faith" under the guise of attempting to enforce the Federal rights created by the statutes listed in S. 2278. . . .

*Id* at 5, in 5 *U.S.Code Cong. & Admin.News, supra* at 5912. While plaintiffs' causes of action have failed to survive the motions to dismiss, the Court is not persuaded that their suit constitutes either frivolous, vexatious, harassing, or malicious litigation. Considering themselves aggrieved as innocent-bystander victims of racial discrimination, plaintiffs did have some basis for bringing suit and for invoking the logical avenues of §§ 1983, 1985, and the Fourteenth Amendment. *Cf. Goff v. Texas Instruments, Inc.,* 429 F.Supp. 973, 976–77 (N.D.Tex.1977). The fact that the arguments advanced by plaintiffs' counsel failed to address both some of the basics and all of the complexities of suing a municipal corporation and private individuals in a civil rights action does not present a sufficient basis for a finding that the litigation was groundless or unreasonably brought, particularly since some of the claims were not covered by binding precedent of the First Circuit. *Cf. Christiansburg Garment Co. v. EEOC,* —— U.S. ——, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

Therefore, in the exercise of the Court's statutory discretion, defendants' motions for the award of reasonable attorney fees should be denied.

### III

In light of the Court's allowance of the motions to dismiss, plaintiffs' motion for a preliminary injunction should be denied.