**Alan S. KOSTKA et al., Plaintiffs, Appellants,**

**v.**

**David W. HOGG et al., Defendants, Appellees.**

**No. 76–1567.**

United States Court of Appeals, First Circuit.

Aug. 4, 1977.

Philander S. Ratzkoff, Boston, Mass., with whom Philip S. Nyman, Lowell, Mass., Charles W. O'Brien, Alan Rindler, and Parker, Coulter, Daley & White, Boston, Mass., were on brief, for appellees.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and DOOLING *, District Judge.

COFFIN, Chief Judge.

■ The damages action authorized by 42 U.S.C. § 1983 is limited in several significant respects: (1) municipalities and other political subdivisions are not subject to suit, see *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), (2) only persons who were directly involved in the wrongdoing may be held liable, see *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), and (3) officials enjoy either an absolute, see, e.g., *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), or qualified, see, e.g., *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), immunity from damages liability. This appeal is an attempt to broaden the exposure of state actors to damages liability by inferring a right of action directly under the Fourteenth Amendment.

Plaintiffs-appellants are the administrators of the estate of Stephen R. Kostka, who was shot and killed by a Westford, Massachusetts police officer, David Hogg, in the course of an arrest. To redress an alleged violation of Kostka's constitutional rights, plaintiffs instituted this action against Hogg, several alleged accomplices, the town of Westford's police chief Joseph Connell, and the town of Westford itself. In addition to alleging that the shooting of Kostka by Hogg deprived Kostka of his constitutional rights, the complaint stated that Connell and the town of Westford "failed in their duty to instruct, train, educate, and control the defendant Hogg in the exercise of his duties as a police officer." Plaintiffs claimed a right to recover against all the defendants under § 1983, and, to the

Edward R. Dean, Jr., Chelmsford, Mass., with whom James M. Geary, Jr., Chelmsford, Mass., was on brief, for appellants.

* Of the Eastern District of New York, sitting by designation.

extent § 1983 was unavailable, they asserted a right to recover directly under the Fourteenth Amendment. The district court dismissed the claims against Connell and the town of Westford, reasoning that neither the police chief nor the town could be held vicariously liable either under § 1983 or directly under the Fourteenth Amendment. The district court made these dismissals final judgments pursuant to Fed.R. Civ.P. 54(b), and this appeal followed.

We first consider the claim against Connell. Plaintiffs do not seriously contend that § 1983 authorizes damages liability where an individual had no personal role in the wrongdoing. Such an actor by definition lacks the bad faith required to expose him to damages liability under § 1983.[1] *See Wood v. Strickland, supra; Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Even if we assume that an implied right of action might exist against Connell under the Fourteenth Amendment, the policies underlying the qualified privilege for officials sued under § 1983 would be fully applicable to a damages action based on the Fourteenth Amendment. The policies in question—essentially avoiding inhibiting individuals from performing governmental functions—have equal force regardless of the source of the plaintiff's right of action. *See Kermit Constr. Co. v. Banco Credito y Ahorro Ponceno,* 547 F.2d 1, 3 n.* (1st Cir. 1976); *Bivens v. Six Unknown Named Federal Narcotics Agents,* 456 F.2d 1339, 1346–48 (2d Cir. 1972), *on remand of,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (good faith defense to actions arising under Fourth Amendment).

Although the claim based upon Connell's breach of his duty to instruct and control Hogg seemingly alleges personal involvement in the wrongdoing,[2] analysis reveals that it suffers from the identical defect. A police chief is under no general federal constitutional duty to take positive action to reduce the incidence of unconstitutional conduct by police officers on the beat, *see Rizzo v. Goode, supra* 423 U.S. at 376, 96 S.Ct. 598. To the extent, therefore, that plaintiffs rely upon the breach of this duty alone, they fail even to plead a constitutional violation by Connell. But we do not read plaintiffs' complaint this narrowly. They seem also to suggest that Connell's failure to take positive action caused the constitutional violations and, as such, is actionable either under § 1983 or the Fourteenth Amendment. But even so interpreted, plaintiffs' complaint fails to state a claim for damages. To negative Connell's official immunity, plaintiffs would have to establish active, bad faith participation in the wrongdoing. For example, if the police chief ordered the constitutional violations or possibly, if he deployed or hired the officer under conditions which he should have known would create a threat to the constitutional rights of the citizenry, damages may well be proper. *See Scheuer v. Rhodes, supra.* Here, plaintiffs made no such allegation. Since it was their burden to plead facts establishing both the constitutional wrong and the inapplicability of de-

1. There is some authority in other circuits for holding a superior officer such as Connell liable under § 1983 under a theory of respondeat superior where state law would hold him liable. *E. g., Tuley v. Heyd,* 482 F.2d 590, 594 (5th Cir. 1973); *Hesselgesser v. Reilly,* 440 F.2d 901, 903 (9th Cir. 1971). Plaintiffs have not sought to hold Connell liable under such a theory, apparently because Massachusetts does not hold a public official liable for the misfeasance of a subordinate. *See Oeschger v. Fitzgerald,* 314 N.E.2d 444, 447 (Mass.App.1974). We therefore find it unnecessary to decide whether to follow *Tuley* and *Hesselgesser.*

2. We note plaintiff's assertion that Connell was under a state created duty to instruct and control Hogg, but failure to comply with such a state duty is not a violation of the federal constitution. Since plaintiffs have not sought to recover on the theory either that a state law claim against Connell is pendent to their federal claim against Hogg or that the incorporation of this state provision into the federal civil rights action is here proper, *cf. Hesselgesser v. Reilly,* 440 F.2d 901 (9th Cir. 1971), we will not consider either theory.

fendant Connell's good faith defense, *see Gaffney v. Silk,* 488 F.2d 1248, 1250–51 (1st Cir. 1973); *cf. Stadium Films v. Baillargeon,* 542 F.2d 577, 579 (1st Cir. 1976), the dismissal of the claim against Connell was proper.[3]

Plaintiffs' claim against the town of Westford requires additional analysis, since the immunity of the town may differ from that of an official. If Hogg or some other municipal official did act in bad faith, the authorization of recovery against a deep pocket defendant like the municipality would not be inconsistent with the Supreme Court decisions concerning official immunity, although there would be other objections. If, on the other hand, the constitutional wrong were the result of a good faith action of a municipal employee, it is not self evident that the overall public interest requires that the municipality always be immune. While the imposition of damages liability on a political subdivision could conceivably result in chilling the performance of some official functions, the likelihood of

substantial inhibition is not great since the officials will not be held personally liable. In light of the substantial countervailing interest in compensating the victims of unconstitutional conduct, it might well be that, if there were a right of action against governmental bodies, their immunity from damages might be significantly narrower than that of the individual officials. Without deciding anything about this question, we turn to the issue of liability in damages of the municipality.

Plaintiffs' basic contention may be stated simply. They appear to concede that they have no right of action against the town of Westford under § 1983, but they rely upon *Bivens v. Six Unknown Named Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) for the proposition that a right of recovery should be created directly under the Fourteenth Amendment.[4] They correctly assert that we have jurisdiction over their claim against Westford under 28 U.S.C. § 1331,[5] and they read *Bivens* as establishing that a

---

**3.** Indeed, this theory strikes us as a transparent attempt to hold Connell vicariously liable under the guise of his having breached a duty owed plaintiffs' decedent. Plaintiffs seemingly have taken one of the modern justifications for the doctrine of respondeat superior—the master's opportunity to select, train, and control his servants, an opportunity which makes the master the best loss-avoider—and converted it into a constitutional duty on the part of all police chiefs. If there is a practical difference between this theory and a vicarious liability theory, we fail to perceive it.

**4.** A number of courts have considered inferring such damages remedies against entities which may not be sued under § 1983. Courts which have apparently created such rights of action include: *Hostrop v. Bd. of Junior College,* 523 F.2d 569, 576–77 (7th Cir. 1975); *Skehan v. Bd. of Trustees,* 501 F.2d 31, 41–44 (3d Cir. 1974), *vacated on other grounds,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975); *Dahl v. City of Palo Alto,* 372 F.Supp. 647 (S.D.Cal.1974). At least one court has addressed the question of vicarious municipal liability directly under the Fourteenth Amendment and has recognized such liability. *See Shifrin v. Wilson,* 412 F.Supp. 1282, 1307–08 (D.D.C.1976); *see also* Note, *Damages Remedies Against Municipalities for Constitutional Violations,* 89 Harv.L.

Rev. 922 (1976). Several courts have created a right of action against political subdivisions which have allegedly committed "takings" of private property. *See, e.g., Miller v. County of Los Angeles,* 341 F.2d 964, 966 (9th Cir. 1965). Courts which have rejected the claim that political subdivisions should be held liable in damages for constitutional violations include: *Crosley v. Davis,* 426 F.Supp. 389 (E.D.Pa.1977); *Mitchell v. Libby,* 409 F.Supp. 1098 (D.Vt. 1976).

**5.** The question of subject matter jurisdiction is, of course, distinct from that whether plaintiffs have stated a claim upon which relief may be granted. *See Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). So long as a claim for federal relief is not frivolous, the action arises under federal law for purposes of § 1331 and the federal court has jurisdiction to adjudicate the claim that a federal right of recovery exists. *Id; see also Mount Healthy School Dist. v. Doyle,* 429 U.S. 274, 276–282, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Since no Supreme Court or First Circuit decision forecloses us from inferring a remedy under the Fourteenth Amendment and since *Bivens* gives the plaintiff's claim at least surface plausibility, we have jurisdiction under § 1331.

federal court with subject matter jurisdiction over a claim has complete freedom to award damages against wrongdoers if it believes the damages liability is sound as a matter of policy. Because they maintain that the creation of vicarious municipal liability under the Fourteenth Amendment will be an effective means of implementing the underlying constitutional guarantees, they suggest we must infer a right of action. While we are willing to assume arguendo that the creation of such liability would be sound policy, we cannot read *Bivens* as granting federal courts such freedom to fashion constitutional remedies.

In *Bivens,* the Court created a private right of action for damages against federal officers who violate the Fourth Amendment. Although the opinion for the Court does contain language that is generally supportive of plaintiffs' reading of it, the Court's methodology belies any claim that *Bivens* should be understood as recognizing sweeping federal judicial power to create damages remedies to vindicate constitutional rights.

The Court began its analysis by carefully evaluating the adequacy of the only existing alternative remedy, a state law tort action against the federal officers in which the Fourth Amendment would operate only to deprive federal agents of the defense that they were acting pursuant to federal authority. Because the interests protected by state tort law may not include those protected by the Fourth Amendment, the Court refused to remit the plaintiffs to a state law tort action, holding that a showing of a Fourth Amendment violation should be "both necessary and sufficient to make out plaintiff's cause of action." *Id.* at 390–95, 91 S.Ct. at 2004. The *Bivens* Court had no difficulty authorizing a damages award. Because there had been "no explicit Congressional declaration that persons injured by the Fourth Amendment may not recover money damages from the agents but must instead be remitted to another remedy, equally effective in the [eyes] of Congress", *id.* at 397, 91 S.Ct. at 2005, the Court rejected the government's and the Court of Appeals' assertion that the test

should be whether a damages remedy was necessary to avoid nullifying the Fourth Amendment. *Id.; see Bivens v. Six Unknown Named Federal Narcotics Agents,* 409 F.2d 718, 723 (2d Cir. 1969), *rev'd,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Because the case also did not involve "special factors counseling hesitation in the absence of affirmative action by Congress", the question for the Court was simply whether plaintiff could redress his injury through damages, the remedy which historically had been regarded as the ordinary one for invasions of personal interests in liberty. 403 U.S. at 405–06, 91 S.Ct. at 2005. The Court answered this question in the affirmative.

■ When there is a request for the judicial creation of a supplemental damages remedy arising directly under a constitutional provision, *Bivens,* we think, teaches that a federal court should proceed with caution. *Compare Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). It should carefully assess the existing remedies and consider the extent of which there has been a Congressional or other determination that the supplemental remedy should not be available. *See Comtronics v. PRTC,* 553 F.2d 701, 707 (1st Cir. 1977). If the proposed remedy is inconsistent with an act of Congress or constitutional provision, it should not be judicially created if the existing remedies adequately protect the constitutional guarantee in question. In *Bivens,* of course, these considerations were not operative, so the Court possessed great freedom. The case at bar is a different matter.

First, as was not the case in *Bivens,* plaintiffs here have available to them a right of action which is measured by constitutional standards: § 1983. While a direct action against a political subdivision might often provide superior opportunities for compensation, the existence of a statutory remedy which is designed to implement the constitutional guarantee may itself render the *Bivens* analysis inappropriate.

What is critical and of greater significance, however, is that here there has been

something akin to an explicit Congressional determination that political subdivisions are not to be held liable in damages for violations of constitutional rights. Although no act of Congress expressly so states, the Court has in a series of decisions beginning in 1961 interpreted § 1983, which was originally enacted in the Civil Rights Act of 1871, as embodying an affirmative policy that federal courts should not hold municipalities liable in damages when municipal employees violate individuals' constitutional rights.

The leading case, of course, is *Monroe v. Pape, supra,* where the Court, based on its interpretation of the legislative history of the 1871 Civil Rights Act, held that municipalities were not "persons" within the meaning of that statute. *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) extended *Monroe* by holding that § 1983 would not permit suits for injunctive relief against municipalities and that § 1983's jurisdictional counterpart, 28 U.S.C. § 1343, would not support jurisdiction of such claims. Although neither *Monroe* nor *Kenosha* interpreted § 1983 as evidencing a definite policy against federal court imposition of liability on municipalities for constitutional violations, two other decisions gave it precisely this effect.

The more significant of these was *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). *Moor* was a case in which a political subdivision and a number of its employees had been sued both under 42 U.S.C. §§ 1983, 1988, and under state law for allegedly violating the plaintiffs' constitutional rights. The *Moor* plaintiffs conceded that § 1983, standing alone, did not authorize the suit against the county, but they relied upon § 1988 for the proposition that they had a federal civil rights claim against the county as well. Section 1988 provides that, where federal law does not provide suitable remedies, state law shall govern in federal civil rights actions insofar as the state provisions are not inconsistent with federal law. The *Moor* plaintiffs noted that the county was vicariously liable under state law for the unconstitutional conduct of its employees and urged that the incorporation of this state remedy into federal law was required by § 1988. The Court rejected this contention. Stating that it had no occasion to consider the adequacy of the remedy created by § 1983, it reasoned that § 1988 was not intended to "authorize the wholesale importation into federal law of state causes of action—not even ones purportedly designed for the protection of federal civil rights", 411 U.S. at 704, 93 S.Ct. at 1793, and that it would be inconsistent with § 1983 to incorporate into federal law provisions that could result in the imposition of liability on a political subdivision. *Id.* at 706, 93 S.Ct. 1785. That the Court's holding rested on an interpretation of § 1983 as embodying an affirmative policy against federal court imposition of municipal liability is clear and is made even clearer by certain dicta of the Court. While eschewing incorporation of state law rights of action, the Court cited with approval several lower court decisions which held that § 1988 incorporated state law that could result in the imposition of liability on state officials who could not have been held liable under § 1983 alone. *Id.* at 704 n.17, 93 S.Ct. 1785. State rights of action against municipalities were given a special status.

 *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) extended *Moor's* interpretation of § 1983. In *Aldinger,* the Court treated the Congressional exclusion of municipalities from § 1983 and § 1343 as precluding federal courts from adjudicating a state law claim against a municipality when the only basis for federal court jurisdiction is that the state claim is "pendent" to a suit against a municipal officer arising under § 1343. Although *Aldinger* contains considerable discussion of "pendent party" jurisdiction and may rest in part on a hostility to the exercise thereof, the Court ultimately based its decision on the affirmative policy against federal court imposition of liability on political subdivisions, which policy the Court found in the Civil Rights Act of 1871. *See id.* at 15–16 & 17 n.12, 96 S.Ct. 2413. Thus *Moor* and *Aldinger* both read § 1983 and § 1343 as

evidencing an intention to preclude the creation of municipal liability for conduct that could constitute a federal constitutional violation.[6]

 While the inconsistency of the proposed inferred right of action with § 1983 eliminates any question of creating such a remedial right under our federal common law powers,[7] the question remains whether such a right of action is constitutionally compelled. *Compare Bivens v. Six Unknown Named Federal Narcotics Agents, supra,* 409 F.2d at 723. In considering this question, we ask whether a damages action against the municipality is indispensable to the effectuation of the Fourteenth Amendment and thus beyond the power of Congress to preclude. We focus on the precise remedy plaintiffs wish us to create: one making political subdivisions vicariously liable in damages for the constitutional wrongs of its employees. In this limited context, we have no difficulty concluding that the proposed damages remedy is not constitutionally necessary.

To accept the contrary view, we would have to hold that the Fourteenth Amendment embraces a personal right in injured persons to be fully compensated for all violations of their constitutional rights and that, because of individual officials' good faith defense and related problems in obtaining or collecting judgments against them, the wrongdoers' employers must be made vicariously liable. We observe first that even if we accepted this view of the Fourteenth Amendment, the Eleventh Amendment would preclude the lower federal courts from implementing it in all cases: we cannot authorize recovery against employers that are states. More significantly, we can find no support for the proposition that the Fourteenth Amendment requires that the family of interests protected by the doctrines of municipal and sovereign immunity must be subordinated to the value of compensating the victims of unconstitutional conduct. Indeed, the cases in which the Court has announced the scope of the state official's immunity from suit suggest precisely the contrary. *See Imbler v. Pachtman, supra,* 424 U.S. at 418–19, 96 S.Ct. 984 and cases cited. We cannot say that the remedial scheme enacted by Congress—permitting damages recoveries under limited circumstances and injunctive relief whenever there has been a sufficient prior threat of harm—does not adequately implement the constitutional guarantees, at least in cases in which there has been no municipal involvement in the wrongdoing. *See* Note, *Damages Remedies Against Municipalities for Constitutional Violations,* 89 Harv.L.Rev. 922, 935–39 (1976).

**6.** We understand that the interpretation of § 1983 as precluding municipal liability is vulnerable to the extent it rests upon the legislative history of the Civil Rights Act of 1871 alone. *See* Comment, 57 Calif.L.Rev. 1142, 1164–70 (1969). Whether or not the legislative history is supportive of this interpretation, broader considerations of federalism support the *Court's approach.* The authorization of tort actions against the fisc is a delicate matter, especially when an instrumentality of a state is concerned. The Eleventh Amendment, of course, reflects the judgment that, in the absence of an explicit Congressional statement to the contrary, federal courts should not have the general authority to impose damages liability against a state itself. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Jagnandan v. Giles,* 538 F.2d 1166 (5th Cir. 1976). Although this amendment does not apply to actions against political subdivisions, *see County of Lincoln v. Luning,* 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890), the values of federalism embodied therein have similar force in this context and, at the very least, the creation of actions against the treasuries of local government bodies is a sensitive political matter. In light of these considerations and the deliberate exclusion of municipalities from § 1983, the power of federal courts to make such entities liable through a different means should not lightly be inferred. *See* P. Bater, D. Shapiro, P. Mishkin & H. Wechsler, The Federal Courts and the Federal System (1977 Supp.) at 149. In any event, given *Aldinger* and *Moor,* it is not the province of this court to question the conclusion that municipal liability for Fourteenth Amendment violations is inconsistent with § 1983. *See Buzynski v. Oliver,* 538 F.2d 6, 7 (1st Cir. 1976).

**7.** *See* Monaghan, *The Supreme Court, `074 Term—Forward: Constitutional Common Law,* 89 Harv.L.Rev. 1 (1975); *Comtronics v. PRTC, supra* at 707; *compare Cort v. Ash, supra* 422 U.S. at 78, 95 S.Ct. 2080.

We emphasize the narrowness of our holding today. Were we faced with a case in which the municipality had ordered the constitutional violation, the application of the constitutional test could be different. Similarly, we express no opinion as to whether specific guarantees, *e. g.,* the taking clause, might require a direct damages action against a political subdivision. *See Foster v. City of Detroit,* 405 F.2d 138, 144 (6th Cir. 1968); *Miller v. County of Los Angeles,* 341 F.2d 964, 966 (9th Cir. 1965); *cf. Brault v. Town of Milton,* 527 F.2d 730 (2d Cir.), *vacated on other grounds, id.* at 736 (1975) (en banc). Finally, we are not indicating an opinion as to whether the Fourteenth Amendment could authorize suits against political subdivisions for equitable relief only.

*Affirmed.*