**Olena RANDLE, Plaintiff,**

v.

**Craig N. GOKEY et al., Defendants.**

**No. C77–563.**

United States District Court,
N. D. Ohio, E. D.

March 6, 1979.

Alvin Gray and Keith E. Belkin, Cleveland, Ohio, for plaintiff.

John Maddox, Arter & Hadden, Cleveland, Ohio, Warner Jackson, East Cleveland, Ohio, for defendants.

## MEMORANDUM OF OPINION

MANOS, District Judge.

The plaintiff, Olena Randle, was arrested at 1:00 a. m. on August 25, 1976, by Officer Guyton and Officer Gokey of the East Cleveland Police Department for allegedly obstructing their efforts to arrest a tenant residing in an apartment owned by Mrs. Randle. Officer Guyton subsequently filed a criminal complaint against Mrs. Randle; after a trial before a jury, she was found not guilty of obstructing the tenant's arrest. Mrs. Randle brings this action under 42 U.S.C. § 1983,[1] contending that the arrest and prosecution were in violation of her constitutional rights. The defendants are Officer Guyton, Officer Gokey, Police Chief Robert Gill, City Manager Edwin Robinson, and the City of East Cleveland. The defendants Gill, Robinson, and the City of East Cleveland have filed motions for summary judgment. For the reasons which follow, the motions for summary judgment are granted.

## I.

This court has examined the affidavits of Police Chief Gill and City Manager Robinson, as well as the affidavit and deposition of Mrs. Randle filed on November 7, 1977, and concludes that neither municipal official committed any acts which give rise to a cause of action under § 1983.

In his affidavit, Robert Gill states that he was the Chief of Police and that Officers Gokey and Guyton were serving on the patrol division of the East Cleveland Police Department on August 25, 1976. Gill did not hire either of the officers. Police Chief Gill was unaware of any citizen complaints prior to the arrest of Mrs. Randle, alleging that Officer Gokey or Officer Guyton had improperly treated an arrestee or citizen, and states that he had no reason to believe that either officer would conduct himself in a manner offensive to the constitutional rights of citizens. Gill knew of no facts which would justify removing either officer from his duties. As of August 25, 1976 Officer Guyton had completed a training program prescribed by the Ohio Peace Offi-

---

1. Mrs. Randle's claims under 42 U.S.C. §§ 1981 and 1985(3) and the pendent claims of her husband were dismissed by this court in an order dated February 27, 1979.

cer Training Council as well as several professional continuing education courses; Officer Gokey was in his second month of probationary training with the East Cleveland Police Department under the tutelage of Guyton. Police Chief Gill was not involved in the filing of the offense report against Mrs. Randle.

The affidavit of Edwin M. Robinson states that he has been City Manager of the City of East Cleveland since September 21, 1976 and that he was Acting City Manager from March 15 to September 21, 1976. Officer Guyton was already on the police force at the time City Manager Robinson took office; Robinson may not, therefore, be held accountable for the plaintiff's alleged injury on the theory that he was negligent in hiring Guyton. He hired Officer Gokey from a certified list of ranked applicants submitted by the City Civil Service Commission. Robinson exercised his best judgment and discretion in selecting Gokey from the list, and knew of no fact indicating that Officer Gokey might take actions in violation of the constitutional rights of citizens. As City Manager, Mr. Robinson had no direct supervisory responsibilities over the conduct and training of individual officers on the East Cleveland police force. Robinson had no personal involvement in the arrest and prosecution of Mrs. Randle.

Plaintiff has filed a brief in opposition to the motions for summary judgment submitted by defendants Gill and Robinson; attached to her brief is an affidavit in which she asserts that "Defendants Robert Gill and Edwin M. Robinson, as Police Chief and City Manager respectively of Defendant City of East Cleveland are responsible for the supervision, hiring, and training of the East Cleveland Police Department, and that with the exercise of proper supervision, hiring, and training, [the allegedly unconstitutional arrest and prosecution of Mrs. Ran-

dle] may not have occurred." It is apparent from a reading of plaintiff's deposition, filed November 7, 1977, that she does not, in fact, have any knowledge of the training and supervision of East Cleveland policemen.[2] This court is satisfied that there exist no genuine issues of material fact regarding the liability of Gill and Robinson under § 1983.

The defendants Gill and Robinson are under no general constitutional duty to take positive action to reduce the incidence of unconstitutional conduct by police officers on the beat. *Rizzo v. Goode*, 423 U.S. 362, 375–76, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The plaintiff does not allege, nor do the facts before this court indicate, that the defendants Gill and Robinson encouraged a pervasive pattern of police misconduct resulting from "the adoption and enforcement of deliberate policies" which they had developed. 423 U.S. 374–75, 96 S.Ct. 605. The plaintiff has alleged no facts indicating that the defendants acted with "deliberate indifference" to her alleged constitutional deprivation. *Leite v. City of Providence*, 463 F.Supp. 585 (D.R.I.1978); see also *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In the absence of a showing of official misfeasance rising above mere allegations of negligence on the part of the superior officers who have been named as defendants in this case, they may not be subjected to liability under § 1983. *Delany v. Dias*, 415 F.Supp. 1351 (D.Mass. 1976); *Reimer v. Short*, 578 F.2d 621 (5th Cir. 1978); *Knipp v. Weikle*, 405 F.Supp. 782, 783 (N.D.Ohio 1975).

Moreover, in *Kostka v. Hogg*, 560 F.2d 37 (1st Cir. 1977), the court was confronted with conclusory allegations of negligence in a § 1983 suit against a municipality and senior officers for a claim arising from the conduct of one of its police offi-

---

**2.** At p. 76 of her deposition, plaintiff was asked the following questions and she gave the following answers:

Q: Do you have any personal knowledge of the training of police officers of the East Cleveland Police Department?
A: No, I don't.

Q: Do you have any knowledge of the supervision of the two officers who were there at your house that night in terms of either who their supervisors were or how the City of East Cleveland supervises its officers?
A: No.

cers. On the facts of this case, this court concurs with the following observation which was made in the *Kostka* decision:

> Indeed, this theory [of negligent hiring, training and supervision] strikes us as a transparent attempt to hold [the police chief] vicariously liable under the guise of his having breached a duty owed plaintiff's decedent. Plaintiffs seemingly have taken one of the modern justifications for the doctrine of respondeat superior—the master's opportunity to select, train, and control his servants, an opportunity which makes the master the best loss-avoider—and converted it into a constitutional duty on the part of all police chiefs. If there is a practical difference between this theory and a vicarious liability theory, we fail to perceive it.

560 F.2d at 41, n. 3. The defendants may not be subjected to liability under § 1983 on a theory of *respondeat superior. Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); see also *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Reimer v. Short,* 578 F.2d 621 (5th Cir. 1978); *Knipp v. Weikle,* 405 F.Supp. 782, 783 (N.D.Ohio 1975).

Even if the plaintiff's claims that her injury was due to the negligent hiring, training, and supervision of Officers Gokey and Guyton were sufficient to make out a cause of action, the affidavits show that her claim has no merit, and that defendants Gill and Robinson conducted their duties in good faith. In *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the Supreme Court discussed the policies underlying qualified good faith immunity:

> Liability for damages for every action which is found subsequently to have been violative of a [citizen's] constitutional rights and to have caused compensable injury would unfairly impose upon the [city official] the burden of mistakes made in good faith in the course of exercising his discretion within the scope of his official duties. . . . Denying any measure of immunity in these circumstances "would contribute not to principled and fearless decision-making but to intimidation."

420 U.S. at 319, 95 S.Ct. at 999 (quoting *Pierson v. Ray,* 386 U.S. 547, at 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). In *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), the Court held:

> When a court evaluates police conduct relating to an arrest its guideline is "good faith and probable cause." [*Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).] In the case of higher officers of the executive branch, however, the inquiry is far more complex since the range of decisions and choices—whether the formulation of policy, of legislation, of budgets, of day-to-day decisions—is virtually infinite. In common with police officers, however, officials with a broad range of duties and authority must often act swiftly and firmly at the risk that action deferred will be futile or constitute virtual abdication of office.

416 U.S. at 245–46, 94 S.Ct. at 1691. The Court concluded:

> It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.

416 U.S. at 247–48, 94 S.Ct. at 1692. In *Strickland,* the Court refined its formulation of qualified good faith immunity, setting forth a two-part test which, though made in the specific context of school discipline, is useful in analyzing the instant case:

> [A] school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within the sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student.

420 U.S. at 322, 95 S.Ct. at 1001. The objective/subjective test of good faith im-

munity has been applied in a myriad of contexts. See *Wolfel v. Sanborn*, 555 F.2d 583, 591 (6th Cir. 1977); *Glasson v. City of Louisville*, 518 F.2d 899 (6th Cir. 1976). In *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), the Court underscored the weight which should be accorded a public official's reliance on state law [3] in determining the validity of his good faith defense under *Strickland*.

■ The City Manager and Police Chief conducted the hiring, training, and supervision of Officers Guyton and Gokey in complete compliance with applicable laws and regulations. Defendant Robinson hired Officer Gokey in good faith, in accordance with the City Civil Service laws. Defendant Gill also acted in good faith in retaining Officer Guyton on the police force, relying upon the fact that Officer Guyton's training exceeded the minimum requirements established by the Ohio Peace Officer Training Council, and in training Officer Gokey in accordance with the Police Department's probationary program. Neither defendant knew, or had reason to know, that his official action would cause a deprivation of constitutional rights; neither defendant acted with malicious intent to deprive any citizen of constitutional rights. See *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

For the foregoing reasons, this court grants the motions for summary judgment on behalf of defendants Gill and Robinson.

## II.

The defendant City of East Cleveland has moved for summary judgment in this action, incorporating into its motion the affidavits of defendants Gill, Robinson, and Guyton. Upon consideration of all the affidavits, as well as the deposition of Mrs. Randle, this court concludes the plaintiff has failed to allege that the City embarked on an official policy or plan which deprived her of her rights. Moreover, there is no base for plaintiff's allegation that Police Chief Gill or City Manager Robinson were negligent in hiring, training, or supervising Officers Gokey and Guyton. Moreover, the plaintiff's allegations, inasmuch as they are an apparent attempt to impose liability on the City on a theory of *respondeat superior*, fail to state a cause of action under 42 U.S.C. § 1983 or the Fourteenth Amendment and 28 U.S.C. § 1331.

■ The plaintiff has sought to impose liability on the City of East Cleveland directly under the Fourteenth Amendment, invoking jurisdiction under 28 U.S.C. § 1331. As shall be discussed below, this court is in doubt that such a theory of municipal liability may be entertained, in the light of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, this court concludes that plaintiff's action is insufficient under either § 1983 or the Fourteenth Amendment.

In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that under certain circumstances, a municipality may be liable in a civil action under 42 U.S.C. § 1983. The Court explicitly held that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held under § 1983 on a respondeat superior theory." 436 U.S. at 691, 98 S.Ct. at 2036. (emphasis original). Rather, a plaintiff's cause of action against a municipality under § 1983 requires a showing that the plaintiff's constitutional deprivation was "caused" by some "official municipal policy." 436 U.S. at 692, 98 S.Ct. at 2036–37 (citing *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)).

---

**3.** "O'Connor argues that he was acting pursuant to state law which, he believed authorized [his allegedly unconstitutional official action], and that he could not reasonably have been expected to know that the state law as he understood it was constitutionally invalid." 422 U.S. at 576, 95 S.Ct. at 2494. The District

Court in *O'Connor* refused to instruct the jury on the defendant's reliance on state law in assessing his good faith, and the Circuit Court affirmed. The Supreme Court vacated this judgment and remanded it for further consideration in light of *Strickland*. 422 U.S. at 577, 95 S.Ct. 2486.

The plaintiff has asserted a claim against the City directly under the Fourteenth Amendment and 28 U.S.C. § 1331. The Sixth Circuit has consistently held that municipalities are amenable to suit in this manner under the doctrine of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[4] In *Bivens,* the Court determined that, in the absence of a statutory remedy, an individual could bring an action directly under the Constitution, alleging jurisdiction under 28 U.S.C. § 1331, to recover money damages for injuries he has received as a result of a deprivation of his constitutional rights. 403 U.S. at 395–97, 91 S.Ct. 1999. In *Jones v. City of Memphis,* 586 F.2d 622 (6th Cir. 1978), the Sixth Circuit Court of Appeals held that the doctrine of *respondeat superior* could not be invoked in an action brought against a municipality under this rationale. In doing so, it reaffirmed its recognition of a constitutional cause of action arising directly under the Fourteenth Amendment in the wake of *Monell's* holding that § 1983 provided a statutory remedy against municipalities for constitutional wrongs. The *Jones* decision rested in part on a thoroughly reasoned pre-*Monell* Second Circuit opinion, *Turpin v. Mailet,* 579 F.2d 152 (2d Cir. 1978), in which the en banc panel recognized a direct constitutional cause of action against municipalities under § 1331, following the rationale of *Bivens.* The *Turpin* court held that "a damage action [may] be maintained against a municipality to redress injuries resulting from those actions of its employees that have been authorized, sanctioned or ratified by municipal officials or bodies functioning at a policy-making level." 579 F.2d at 164. The Sixth Circuit in *Jones* held:

> We recognize that the scope of municipal liability enunciated by the Second Circuit in *Turpin* may not be identical to the extent of municipal liability indicated by the Supreme Court in *Monell.* We express no views in this opinion as to the "full contours of municipal liability." *Monell,* 436 U.S. 658 at 695, 98 S.Ct. 2018 at 2038. In *Monell,* the Supreme Court said: "[W]e expressly leave further development of this action to another day." *Id.*

586 F.2d at 625.

The validity of *Jones'* recognition of municipal liability under both § 1983 and the Fourteenth Amendment has been placed in doubt by the subsequent Supreme Court order vacating *Turpin* and remanding it to the Second Circuit for further consideration in light of *Monell. City of West Haven v. Turpin,* —— U.S. ——, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978). On reconsideration, the en banc panel held:

> The *Monell* decision does not call into question *Turpin's* central thesis that federal courts have the power—and the obligation—under the general federal question jurisdiction to create remedies to redress constitutional grievances. *See* 579 F.2d at 157–60. An important element in our decision to imply a damages remedy against municipalities under the 14th Amendment, however, was that Congress had not supplied a vehicle by which the right in question could be vindicated. *Id.* at 157.
>
> *Monell* held that § 1983 suits may be brought against municipalities under conditions essentially coextensive with those we imposed on the private right of action in *Turpin.* We therefore conclude that—under the very rationale of our prior opinion—there is no place for a cause of action against a municipality directly under the 14th Amendment, because the plaintiff may proceed against the city of West Haven under § 1983.

*Turpin v. Mailet,* 591 F.2d 426, 427 (2d Cir. 1979).

 This court holds that even if the plaintiff has asserted a valid *"Bivens"* cause of action directly under the Fourteenth Amendment, it is without merit.

---

4. *See, e. g., Jones v. City of Memphis,* 586 F.2d 622 (6th Cir. 1978); *Gordon v. City of Warren,* 579 F.2d 386 (6th Cir. 1978); *Wiley v. Memphis Police Dep't.,* 548 F.2d 1247 (6th Cir.), *cert.* denied, 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 78 (1977); *Amen v. City of Dearborn,* 532 F.2d 554 (6th Cir. 1976).

Plaintiff's transparent, unsubstantiated allegations of negligence on the part of Gill and Robinson, which have been repudiated in affidavits accompanying their motions for summary judgment, are a veiled attempt to render the city liable on a theory of *respondeat superior*. *Kostka v. Hogg*, 560 F.2d 37, 41 n. 3 (1st Cir. 1977). Under either § 1983 or the Fourteenth Amendment, her claim must be dismissed.

For the foregoing reasons, the motion for summary judgment for the City of East Cleveland is granted.

The motion of defendant Police Chief Robert Gill for summary judgment is granted. Fed.R.Civ.P. 56.

The motion of defendant City Manager Edwin Robinson for summary judgment is granted. Fed.R.Civ.P. 56.

The motion of defendant City of East Cleveland for summary judgment is granted. Fed.R.Civ.P. 56.

IT IS SO ORDERED.