James P. NAUGHTON, etc., et al., Plaintiffs, Appellants,

v.

Dr. Joseph BEVILACQUA, etc., et al., Defendants, Appellees.

No. 78–1552.

United States Court of Appeals, First Circuit.

Argued April 4, 1979.
Decided Sept. 20, 1979.

from childhood schizophrenia (autism). Tranquillizers have occasionally been prescribed to control his behavior. The use of tranquillizers is not unusual treatment for Timothy's condition, but Timothy happens to react adversely to tranquillizers of the phenothiazine family, including Haldon. As his allergy to Haldon was made known when he was admitted to IMH, plaintiffs allege that Timothy's compatibility with other phenothiazines should have been tested before any tranquillizers of that type were administered. Since his admission to IMH, however, Timothy has been given phenothiazines, sometimes with serious adverse reactions. On May 20, 1977, he suffered a reaction to Prolixin, a phenothiazine, prompting a meeting between IMH staff members and Timothy's parents and attorney. Procedures to protect Timothy from further incidents, such as posting notices, were agreed to, but plaintiffs allege that Timothy subsequently again was given phenothiazines and again suffered severe adverse reactions. Plaintiffs attribute these incidents in part to poor recordkeeping practices at IMH.

Apparently feeling that nothing short of a court injunction will stop the IMH staff from administering phenothiazines to Timothy, plaintiffs sued for equitable relief as well as damages for Timothy's injuries, naming the State of Rhode Island, Dr. Joseph Bevilacqua, and Dr. Gerard Bannash as defendants. Dr. Bevilacqua is the Director of MHRH, and Dr. Bannash was, at the time covered by the complaint, a physician at IMH—it allegedly was he who prescribed the Prolixin for Timothy in May 1977.

George M. Prescott, Lincoln, R. I., with whom Oster, Groff & Prescott, Lincoln, R. I., was on brief, for plaintiffs, appellants.

S. Arlene Violet, Providence, R. I., for appellant-intervenor.

Forrest L. Avila, Sp. Asst. Atty. Gen., Providence, R. I., with whom Dennis J. Roberts, II, Atty. Gen., Providence, R. I., was on brief, for defendants, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

James P. Naughton brought this action individually and on behalf of his son, Timothy, a voluntarily committed resident patient of the Rhode Island Institute of Mental Health (IMH), which is operated by the Rhode Island Department of Mental Health, Retardation and Hospitals (MHRH). Timothy is diagnosed as moderately mentally retarded and as suffering

Plaintiffs based this suit on both the constitution—alleging violation to a right to treatment—and the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. §§ 6001–6081 (Bill of Rights Act or Act), under which federal money is given to the states for the operation of programs for the developmentally disabled on the condition that they meet certain standards of patient care. See 42 U.S.C. §§ 6010, 6011,

6063.[1] As IMH received federal funds under the Act, plaintiffs contend that it is under a statutory duty to provide Timothy with "appropriate treatment," and that this duty forbids the administration of drugs for purposes of restraint rather than habilitation. *See* 42 U.S.C. § 6010(3)(B)(iv). They allege that administering phenothiazines to Timothy violated these rights, which, it is contended, are individually enforceable, either in an action under 42 U.S.C. § 1983, or in an implied cause of action under the Act itself.

The district court, without reaching the constitutional issues, agreed that the Act creates substantive rights in favor of patients participating in state programs receiving federal funds, and that these rights can be enforced individually, through either an implied cause of action or an action under 42 U.S.C. § 1983. It also believed that plaintiffs had stated a claim under the Act because, broadly read in light of limited discovery, their complaint alleged not simply that phenothiazines were administered to Timothy inadvertently and negligently, but that they were administered as "part of a deliberate treatment plan designed mere-

ly to control rather than habilitate." The court nevertheless dismissed the action as to the State of Rhode Island and Bevilacqua. 458 F.Supp. 610 (D.R.I.1978). Plaintiffs appeal from the decision to dismiss as to Bevilacqua, alleging that he is a necessary party for effective injunctive relief.[2] As we agree that Bevilacqua was not a proper party defendant, we affirm.[3]

Bevilacqua was sued because he is the Director of MHRH, the agency with jurisdiction over IMH and its staff, and not because of any personal role in the administration of phenothiazines to Timothy. Bevilacqua filed an affidavit stating that he has, "never prescribed, administered, or directed the administration of any drug or medication to Timothy Naughton," and that he has no involvement in Timothy's primary health care.[4] Plaintiffs make no allegation to the contrary. There is furthermore no allegation that Bevilacqua promulgated or approved a policy or program that would cause doctors to administer phenothiazines inappropriately to allergic patients, that he knowingly hired incompetent staff, or that faced with a large number of similar misad-

1. Plaintiffs also pleaded a pendent state tort claim in negligence.

2. Plaintiffs' sole allegation against the State of Rhode Island, which has waived its sovereign immunity, R.I.G.L. sec. 9–31–1 (1969), was that it employed Bevilacqua and Bannash and was responsible for their wrongful acts committed in the usual scope of their employment. The district court dismissed the complaint as to Rhode Island on the ground that *respondeat superior* is not a sufficient basis for suit. *Cf. Monell v. Department of Social Services*, 436 U.S. 658, 691–93 & n.57, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (municipalities, although subject to suit under 42 U.S.C. § 1983, cannot be sued merely on theory of *respondeat superior*). Although the court entered final judgment as to both Rhode Island and Bevilacqua, Fed.R.Civ.P. 54(b), plaintiffs requested such certification only as to Bevilacqua and do not press the issue of Rhode Island's liability on appeal. We accordingly do not reach this question.

3. We express no opinion at this time on the merits of the district court's decision that the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. §§ 6001–6081, creates substantive rights that are privately enforceable. Even assuming that this is correct, plain-

tiffs' allegations against Bevilacqua are insufficient to subject him to suit for violations of the Act. Nor do we consider what showing might be required for an injunction against persons other than Bevilacqua in a case such as this one.

4. Bevilacqua stated in his affidavit that he is not responsible for Timothy's primary health care, that he administers four hospitals and a host of programs, that his department employs 4,600 persons and has about 3,000 patients, and that,

"I have never prescribed, administered, or directed the administration of any drug or medication to Timothy Naughton. I have never prepared or directed the preparation of any medical records concerning Timothy Naughton. I have not been involved in or informed about the course of treatment which has been provided Timothy Naughton. Given the number of patients and clients which my department serves, and my numerous administrative duties, it is clearly impossible for me to be involved in direct patient care.

"I have no direct personal involvement in the incidents alleged in plaintiffs' complaint."

ventures he failed to take proper corrective measures.

■ Despite Bevilacqua's remote relationship to the incidents alleged in the complaint and to Timothy's day-to-day care, plaintiffs asked the district court,

"For a permanent injunction against the defendant, Director of MHRH, his successors, agents, servants, employees, and any other persons acting in active concert with him, from administering any drugs to which Timothy is known to have adverse reactions; to compel the said defendant to maintain medical records adequate to apprise the staff of the Institute of Mental Health as to what drugs may be safely administered to Timothy Naughton; and to provide him with a program of adequate and appropriate care, treatment and education."

We find no error in the district court's conclusion that, on the facts pleaded, there would be no basis for issuing an injunction against Bevilacqua.[5]

The liability of state supervisory officials to suit for injunctive relief is ill-defined. In civil rights litigation, however, the Supreme Court has not been receptive to broad injunctions against high-level state supervisors in the absence of any showing that they have caused or are directly responsible for violation of constitutional rights. *See Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). There must be a sufficient association between the supervisors and the unlawful policy or program. *See Rizzo*, 423 U.S. at 371, 96 S.Ct. 598. This circuit has permitted equitable suits against agency heads where the alleged violations, if not the product of an affirmative policy or practice of the particular agency, are so pervasive that the agency head, because of his statutory duties and powers, must be

considered a responsible party and is necessary to effective relief. *E. g., DiMarzo v. Cahill*, 575 F.2d 15, 18 (1st Cir.), *cert. denied*, 439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978); *Inmates of the Suffolk County Jail v. Eisenstadt*, 494 F.2d 1196, 1198–99 (1st Cir.), *cert. denied*, 419 U.S. 977, 95 S.Ct. 239, 42 L.Ed.2d 189 (1974). We have distinguished such suits from suits involving allegations of "sporadic incidents, over which the [agency head] might properly claim to have no knowledge or control." *DiMarzo*, 575 F.2d at 18; *see Coalition of Black Leadership v. Cianci*, 570 F.2d 12, 15 n.2 (1st Cir. 1978).

Appellants argue that Bevilacqua is a proper defendant because, as head of MHRH, he has authority to plan and administer programs and services to meet the needs of the emotionally disturbed, including services required as a condition of receiving federal funds under the Bill of Rights Act, *see* R.I.G.L. sec. 40.1–1–8; 40.1–7–5. He is also responsible for ensuring that records are kept of all residents of MHRH institutions, and is to receive reports of accidents, injuries, and deaths of MHRH patients, *see* R.I.G.L. sec. 40.1–2–1. But these statutory duties bear only the most tangential relationship to the focal point of this lawsuit: the quality and nature of Timothy's day-to-day care at IMH. Not only is there no allegation that Bevilacqua has adopted or approved an unlawful policy of administering phenothiazines to patients in Timothy's position, there also is no dispute over the fact that Timothy should not be given drugs to which he is allergic. Defendants do not assert any right to treat Timothy with Prolixin or Haldon and, after the Prolixin was given to Timothy in May 1977, the Chief of Psychiatric Services at IMH ordered notices of Timothy's allergy to phenothiazines posted and

---

5. Plaintiffs seek damages also, although their primary concern appears to be to ensure proper medical care for Timothy through injunctive relief. On appeal, they do not dispute the district court's determination that Bevilacqua could not be liable for damages for the harm done to Timothy in administering drugs to which he is allergic. We agree that plaintiffs could not hope to recover damages from Bevi-

lacqua on these allegations. *See Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Kostka v. Hogg*, 560 F.2d 37, 40 (1st Cir. 1977) (supervisor with no personal role in wrongdoing not liable for damages under 42 U.S.C. § 1983; same policy applies to any possible action implied under the fourteenth amendment).

agreed to other protective measures. Thus, although plaintiffs feel that defendants have not gone far enough, the district court is not in any immediate way confronted with a dispute over the lawfulness of policies emanating from Bevilacqua.

Plaintiffs' primary concern is to prevent the recurrence of the May 1977 incident by ensuring that IMH staff members are notified of Timothy's sensitivities and that phenothiazines are not administered in the future without first ascertaining whether Timothy will react adversely to them. While relief against the state director might accomplish this, there is no reason to believe that any injunction—assuming one is found to be proper—would not operate just as effectively against persons more immediately concerned with Timothy's care. An injunction against Bevilacqua, on the other hand, would burden him on peril of contempt, with preventing "speculative and probably only sporadic future misconduct" by employees with whom he has no direct contact, where that misconduct "is not part of a pattern of persistent and deliberate official policy," *Campbell v. McGruder*, 188 U.S.App.D.C. 258, 263, 580 F.2d 521, 526 (D.C.Cir. 1978) (Bazelon, J.), and where any past misconduct has consisted only of isolated incidents over which he had "no knowledge or control," *DiMarzo*, 575 F.2d at 18. The practices alleged here—inadequate recordkeeping and improper medical treatment as to a single patient in a single hospital—are more immediately the concern of the staff of that hospital, of Timothy's present physician, and perhaps of others directly responsible for his medical records and care. The district court has ample power, upon adequate cause shown—a matter as to which we do not here speculate—to allow the adding or substituting of parties. *See* Fed.R.Civ.P. 19, 25(d). We see no error in the district court's determination that Bevilacqua was neither a proper nor a necessary party to this litigation.

*Affirmed.*