**JOHN V., a minor by SANDRA V., his next friend and mother**

v.

**John McMANUS, Director of The Dept. for Children and Their Families, Individually and in his official capacity, et al.**

**Civ. A. No. 83–0380 P.**

United States District Court,
D. Rhode Island.

Feb. 10, 1984.

Patricia M. Beede, of R.I. Legal Services, Newport, R.I., for plaintiff.

John Farley, Dept. of Children & Their Families, Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

Plaintiff John V. is an emotionally disturbed minor resident of Rhode Island who is said to have received treatment since February 1980 through the state's Mental Health Services for Children and Youth program (MHSCY), which Plaintiffs state is administered by the Rhode Island Department for Children and their Families (DCF). By way of eleven causes of action, Plaintiffs allege that since 1983 John V. has been deprived of proper treatment in violation of several federal and state statutes and the Fourteenth Amendment. They also allege that Defendant McManus, Director of DCF, has a policy of requiring parents of a dependent child needing residential psychiatric placement to transfer custody of the child to DCF as a condition of that placement. Plaintiffs state that this policy was applied to them in violation of their fundamental right to familial privacy and integrity, a right that is guaranteed by the Due Process Clause of the Fourteenth Amendment. *See Smith v. Organi-*

*zation of Foster Families for Equality and Reform,* 431 U.S. 816, 842–44, 97 S.Ct. 2094, 2108–09, 53 L.Ed.2d 14 (1977).

Defendant Thomas D. Romeo is Director of the Rhode Island Department of Mental Health, Retardation and Hospitals (MHRH); here he is sued in his official capacity. Romeo has moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss this suit as to him on the ground that plaintiffs' complaint fails to state a claim upon which relief can be granted. For the reasons explained below, the motion is denied.

Romeo's arguments in support of his motion can be broken down into two groups: (1) that any powers of MHRH that might have rendered Romeo amenable to suit under these facts were transferred to DCF by R.I.Gen.Laws § 42–72–18 (1982 Supp.) and (2) that the complaint's lack of any allegation that John V. has been the beneficiary of a program for which MHRH receives federal funds results in a failure to state a cause of action under § 504 of the federal Rehabilitation Act (29 U.S.C. § 794).

In considering Romeo's "transfer of powers" argument, the Court must first examine the relevant state statutes. R.I.Gen. Laws § 40.1–5–3(1) (1977 reenactment) provides: "The state department of mental health, retardation and hospitals is charged with the execution of the laws relating to the admission and custody of the mentally disabled." Plaintiffs allege, and for the purposes of this motion the Court will assume, that John V. is mentally disabled within the meaning of § 40.1–5–3(1). *See* § 40.1–5–2(13) (defining "mental disability" as "a mental disorder in which the capacity of a person to exercise self-control or judgment in the conduct of his affairs and social relations or to care for his own personal needs, is significantly impaired").

Romeo's first argument is based upon R.I.Gen.Laws § 42–72–18 (1979), which provides in part:

There are hereby transferred to the director of the department of children and youth services:

A. Those children and youth functions and services of the department of mental health, retardation and hospitals administered through or with respect to the division of curative services ... including generally and specifically components within the institute of mental health and "Services for emotionally disturbed children" in [chapter 7 of title 40.1], services for emotionally disturbed children and of all officers, employees, agencies, advisory councils, committees and commissions relating to children and youth services of said division of curative services....

B. So much of other functions or parts of functions and employees and resources physical and funded, related thereto of the director of the department of mental health, retardation and hospitals as are incidental to and necessary for the performance of paragraph A. above.

Romeo says that § 42–72–18 transferred "the responsibility for services to emotionally disturbed children" from MHRH to DCF, and that "[b]ased on the statutory transfer of responsibilities to [DCF], MHRH has neither the resources nor the responsibility to provide services to John V."

■ The Court finds, however, that there is nothing on the face of § 42–72–18 that transfers or even modifies MHRH's responsibilities under § 40.1–5–3(1). Those responsibilities are of a supervisory or enforcement nature; the single sentence of § 40.1–5–3(1) mentions nothing about the provision of services. The plain sense of § 40.1–5–3(1) is that MHRH "is charged with the execution" of *all* laws relating to the admission and custody of *all* mentally disabled persons, of which Plaintiff John V. is allegedly one, and nothing in § 42–72–18 has altered that responsibility.[1] And it is

---

1. It is at least possible that, at trial, Romeo could prove that the actual implementation of § 42–72–18 belies this plain-sense interpretation of the statutory scheme and that, as Director of

MHRH, he is, in fact, without any supervisory or enforcement powers over any program that has provided or should have provided services to John V. The Court, notes, however, that

that responsibility that renders him amenable to suit in this case. *Cf. Donohue v. Board of Elections*, 435 F.Supp. 957, 963 (E.D.N.Y.1976) ("It is well-settled that a state official may properly be made a party to a suit seeking to enjoin the enforcement of an allegedly unconstitutional act if that official plays some role in the enforcement of the act."); *Walsh v. Louisiana High School Athletic Association*, 616 F.2d 152, 154 n. 1 (5th Cir.1980), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981) (finding suit properly brought against defendant that enforced allegedly unconstitutional regulations).

■ In *Naughton v. Bevilacqua*, 605 F.2d 586 (1st Cir.1979), the First Circuit stated:

> This circuit has permitted equitable suits against agency heads where the alleged violations, if not the product of an affirmative policy or practice of the particular agency, are so pervasive that the agency head, because of his statutory duties and powers, must be considered a responsible party and is necessary to effective relief. We have distinguished such suits from suits involving allegations of "sporadic incidents, over which the [agency head] might properly claim to have no knowledge or control."

*Id.* at 589 (citations omitted).

Whether or not the refusal to provide John V. with certain services is "an affirmative policy or practice" or merely a "sporadic incident" is a factual issue only tangentially addressed by Romeo's Memorandum. For the purposes of the instant motion to dismiss, it is sufficient that the Complaint alleges that (1) "it is the policy of Defendant Bauermeister [Director of the Adolescent Unit and a defendant in this suit] to accept voluntary and involuntary admissions for treatment only if he determines that they are psychotic." Complaint at ¶ 45, (2) that this policy violates a Rhode Island statute, *id.* at ¶ 46, (3) that Romeo knows, or has reason to know, of Defendant Bauermeister's admissions policy, *id.* at ¶ 106, and (4) that Romeo is charged with overall responsibility for the operation of MHRH, *id.* at ¶ 8, the agency which, as noted above, is in turn apparently charged by § 40.1-5-3(1) with the execution of laws relating to admissions policies. In short, the Complaint is sufficient to survive a Rule 12(b)(6) motion.

Romeo's Memorandum of Law in support of his motion to dismiss also states that Plaintiffs have not alleged that "John V. has ever been in the custody of MHRH, has ever been treated in an MHRH facility or has ever requested or been denied services from MHRH." Romeo does not contest Plaintiffs' assertion that he has received treatment through MHSCY. Instead, Romeo apparently argues that MHSCY, as a division of DCF, has no legal relationship to MHRH. He says that "Plaintiff's claims necessarily are predicated upon the alleged acts and conduct of the Defendant that has custody of him," and that John V. "is a stranger to [him] and has never been under the care or supervision of MHRH, and, therefore, the motion to dismiss should be granted." This argument is only a variation of that discussed in the previous paragraphs. In the face of Romeo's apparent statutory supervisory or enforcement powers regarding all admissions policies with regard to *any* mentally disabled person, it is unnecessary that Plaintiffs allege that John V. was ever "under the care or supervision of MHRH" for this Court to deny the motion to dismiss.

Romeo's next argument is that Plaintiffs have failed to state a cause of action

---

Romeo's burden here would be considerable—he would also have to show that this "abdication" of his responsibilities was authorized by statute. In any case, Romeo has offered no evidence to this effect.

Another rather remote possibility is that Romeo could prove that the transfer of his supervisory or enforcement powers was somehow "incidental to and necessary for the performance of [§ 42-72-18(A) ]," which under § 42-72-18(B), would effect such a transfer. The Court notes, however, that it has found nothing in the statutory scheme to suggest that supervisory or enforcement powers are inherently "incidental to and necessary for" fulfillment of DCF's responsibilities. And, again, Romeo has not offered evidence on this point.

against him under the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C.A. §§ 6000–81 (1983) (DDA). Romeo's analysis of the DDA's relationship to this suit in general and to him in particular is far from clear to the Court. He agrees that R.I.Gen.Laws § 40.1–1–8 [2] designates MHRH, of which he is Director, as the state's sole agency "to administer the State-wide plan pursuant to the provisions of the [DDA]" and that MHRH has in fact received DDA funds. Memorandum at 4. But he asserts that none of the DDA funds have been distributed to any program or facility which has treated John V.

■ The Court infers from these statements that Romeo claims to be unamenable to suit under the DDA because John V. allegedly has never been the beneficiary of services funded even in part by the DDA. Assuming that the Court is correct in this interpretation of Romeo's argument, Romeo has stated the problem quite precisely: allegedly, John V. has never been the beneficiary of services to which he says that he is entitled under the DDA. Quite frankly, the Court does not understand how admitting this denial of services renders Romeo unamenable to suit; just the opposite would appear to be the case. Perhaps the argument is intended to be that Romeo is without authority over any program or facility that allegedly was *supposed* to provide services to John V. The answer to this argument, however, is basically the same to Romeo's other arguments considered above, that R.I.Gen.Laws § 40.1–5–3(1) charges MHRH with a very general responsibility for administering laws relating to the mentally disabled. And since any person who falls within the definition of "developmental disability" for the purposes of the DDA, *see* 42 U.S.C.A. § 6001(7) (1983), (as does John V., allegedly) is almost certainly "mentally disabled" within the meaning of R.I.Gen.Laws § 40.-1–5–3(1), it makes little sense to argue that Romeo was without authority to ensure the proper administration of the DDA in Rhode Island. Accordingly, this approach also must fail as a rationale for Romeo's motion to dismiss.[3]

In summary, then, all of Romeo's arguments for dismissal, at least those considered above, are laid to rest by R.I.Gen. Laws § 40.1–5–3(1), which the Court interprets as a general mandate for MHRH to supervise the execution of laws relating to Rhode Island's mentally disabled. Romeo's only additional argument, that the Complaint's lack of any allegation that John V. had been the beneficiary of a program for which MHRH receives federal funds results in a failure to state a claim under § 504 of the Rehabilitation Act, need not be considered by the Court at this time, since Plaintiffs have not as yet alleged a § 504 violation by Romeo. *See* Plaintiffs' Memorandum at 8 n. 11.

Accordingly, Defendant Romeo's motion to dismiss is denied.

---

**2.** R.I.Gen.Laws § 40.1–1–8 (1982 Supp.) states:

Except where a single state agency is otherwise designated or established in accordance with any other state law, the Rhode Island department of mental health, retardation and hospitals is hereby designated to be the sole agency of the State of Rhode Island and Providence Plantations to establish and administer any statewide plan for the construction, equipment, maintenance, or operation of any facility for the provision of care, treatment, diagnosis, rehabilitation, training or related services, which plan is now or may hereafter be required as a condition to the eligibility for benefits pursuant to the provisions of an act entitled the "Developmental Disabilities Assistance and Bill of Rights Act," as enacted by Title V of P.L. 95–602 on October 15, 1978 by the congress of the United States. The state department of mental health, retardation and hospitals with the consent of the developmental disabilities council is also authorized to receive, administer, and expend any funds that may be available under this federal act, or from any other sources public or private, for such purposes.

**3.** Romeo also appears to be making an argument to the effect that Plaintiffs have failed to exhaust their administrative remedies available for the DDA claim. The very opinion of this Court upon which Romeo relies for support for this argument holds that administrative exhaustion, although perhaps "a preferable course" for the DDA plaintiff, is not a prerequisite to initiation of the suit. *Naughton v. Bevilacqua*, 458 F.Supp. 610, 616 n. 3 (D.R.I.1978), *aff'd*, 605 F.2d 586 (1st Cir.1979).